NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241489-U

NOS. 4-24-1489, 4-24-1490 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 30, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Warren County |
| BRANDON ROSENBALM, | ) | Nos. 21CF35 |
|     Defendant-Appellant. | ) |     24CF12 |
| | ) | |
| | ) | Honorable |
| | ) | James Standard, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE HARRIS delivered the judgment of the court.
Justice Lannerd concurred in the judgment.
Justice DeArmond concurred in part and dissented in part.

**ORDER**

¶ 1     *Held*: (1) Defendant established his convictions for aggravated domestic battery and domestic battery of the same victim violated the one-act, one-crime doctrine and constituted second-prong plain error.
        (2) Defendant failed to establish the trial court imposed an excessive sentence.

¶ 2     Defendant, Brandon Ronsenbalm, appeals from judgments of conviction and sentence entered against him in Warren County case Nos. 21-CF-35 and 24-CF-12. On appeal, defendant argues (1) his convictions in case No. 24-CF-12 for aggravated domestic battery and domestic battery of the same victim violated the one-act, one-crime doctrine and (2) the trial court imposed an excessive sentence. We affirm in part and vacate in part.

¶ 3                      I. BACKGROUND

¶ 4              A. Warren County Case No. 21-CF-35

¶ 5                                    1. *Guilty Plea and Sentence*

¶ 6            In May 2022, defendant pleaded guilty in case No. 21-CF-35 to one count each of aggravated battery (720 ILCS 5/12-3.05(d)(4)(i) (West 2020)), domestic battery (*id.* § 12-3.2(a)(2)), and resisting a peace officer (*id.* § 31-1(a), (a-7)), and he was sentenced to 36 months of probation. The conditions of defendant's probation prohibited him from, in relevant part, consuming alcohol or illicit drugs, and from violating any criminal statute.

¶ 7                              2. *Petitions to Revoke Defendant's Probation*

¶ 8            In July 2023, the State filed a petition to revoke defendant's probation, alleging he had tested positive for cocaine and benzoylecgonine earlier that month. In November 2023, the State filed an amended petition to revoke, adding allegations that on October 5, 2023, defendant had committed the criminal offense of aggravated battery against two separate victims. Defendant admitted to having violated one or more of the conditions of his probation, and, upon resentencing, his term of probation was extended three months, to August 2025.

¶ 9            In February 2024, the State filed another petition to revoke defendant's probation, alleging that on January 19, 2024, he had committed the criminal offenses charged in case No. 24-CF-12. Those charges are discussed below in further detail. In April 2024, the State filed an amended petition to revoke, adding an allegation that defendant had committed the criminal offense of communicating with a witness on March 21, 2024. In May 2024, following a hearing on the State's petition, the trial court entered an order revoking defendant's probation and continuing the proceedings for resentencing.

¶ 10                              B. Warren County Case No. 24-CF-12

¶ 11                                    1. *Charges*

¶ 12           In January 2024, the State charged defendant in case No. 24-CF-12 with

aggravated domestic battery against I.M.R. (count I) (720 ILCS 5/12-3.3(a-5) (West 2024)), domestic battery against I.M.R. (count II) (*id.* § 12-3.2(a)(2)), domestic battery against Amanda Gibbs (count III) (*id.* § 12-3.2(a)(2)), and criminal damage to property (count IV) (*id.* § 21-1(a)(1)). The State alleged in count I that "defendant, in committing a domestic battery in violation of 720 ILCS 5/12-3.2(a), strangled I.M.R., a family or household member of the defendant, to the extent that defendant intentionally impeded the normal breathing of I.M.R. by applying pressure to her throat." In count II, the State alleged that "defendant knowingly made physical contact of an insulting or provoking nature with I.M.R., a family or household member of the defendant, by grabbing her by the neck and causing her head to strike the wall, defendant having been previously convicted of domestic battery in Warren County case 2023CF35."

¶ 13                                      2. *Jury Trial*

¶ 14           In April 2024, defendant's case proceeded to a jury trial. We discuss only the evidence relevant to the issues raised on appeal.

¶ 15           I.M.R.—defendant's daughter, who was 16 years old at the time of trial—testified that on January 19, 2024, she was at home with several of her friends and siblings. Defendant was also present, along with his girlfriend, Gibbs, and a friend. I.M.R. testified that earlier in the evening she had seen defendant "taking several shots of Fireball and Rumple Minze," and he was clearly "under the influence of alcohol" because he "couldn't stand straight and he was slurring his words." While I.M.R. was in another room, she heard defendant get "into an altercation with his friend," and "they started fighting." Shortly after the fight had ended and defendant's friend had left the residence, I.M.R. "heard [defendant] and [Gibbs] screaming at each other." I.M.R. went to check on the commotion and observed Gibbs walking out the back door. Defendant followed Gibbs outside, and then I.M.R. "saw [defendant] grab [Gibbs] and throw her to the

ground and smash her phone." I.M.R. began screaming at defendant to let Gibbs leave the house. Defendant eventually allowed Gibbs to leave and then returned inside. Once inside, defendant began to argue with I.M.R. The argument soon escalated to the point where, as explained by I.M.R.: "I had asked him to stop screaming and he had charged at me" and "grabbed me by my hoodie and my hair and he tried to throw me down the stairs." I.M.R. provided the following additional details about the incident:

"Q. Now, there's an allegation that your father choked you at some point. Is that the case?

A. Yes.

Q. Okay. Do you remember at what point in these events that took place?

A. Right after he tried to throw me down the stairs.

Q. Okay. And when you say he choked you, what do you mean by choked you? Like a headlock or can you describe it any more specifically?

A. He had put his hands around my throat and started squeezing.

Q. Did that have any physical effect on you?

A. Yes, sir. I couldn't breathe and I felt my face getting hot."

¶ 16    Following the parties' arguments, the jury found the State had proven defendant guilty of all counts beyond a reasonable doubt.

¶ 17                    C. Consolidated Sentencing Hearing

¶ 18    On August 7, 2024, the trial court conducted a consolidated sentencing hearing.

¶ 19                    1. *The State's Evidence*

¶ 20    The State called Deputy Timothy Rhoads and Lieutenant Brandon Blackman to testify at defendant's sentencing hearing. It also filed a presentence investigation report (PSI) with the court.

¶ 21                                    a. The PSI

¶ 22        According to the PSI—and excluding defendant's numerous traffic offenses and his convictions in case No. 21-CF-35—defendant's criminal history at the time of his sentencingconsisted of the following misdemeanor convictions: (1) resisting a peace officer in 2013, (2) resisting a peace officer in 2014, (3) battery in 2022, (4) permitting a minor to become intoxicated in 2023, and (5) battery in 2024.

¶ 23                                    b. Deputy Rhoads

¶ 24        Deputy Rhoads of the Warren County Sheriff's Office testified to the events involving defendant which had transpired on April 11, 2021, and gave rise to the charges filed against defendant in case No. 21-CF-35. Rhoads testified that on that date, he responded to a "domestic"—*i.e.*, domestic battery— dispatch at approximately 9 p.m. Upon arriving at the scene, Rhoades "found [defendant's then-girlfriend] laying on the ground and [defendant] in the driver's seat of the car, yelling and screaming" at her. Deputy Rhoades testified that when he attempted to make contact with defendant, defendant "attacked" him and "pushed [him] to the ground." Deputy Rhoades continued, "We rolled around on the ground where I had yelled for assistance from the Monmouth Police Department. They come [*sic*] and helped me get [defendant] under control and in handcuffs." Deputy Rhoades testified that once they had succeeded in transporting defendant to the police station, defendant "refused to cooperate during that course and once we got him into the booking chair, he kicked me in the face." Deputy Rhoades further testified that during this incident, defendant had exhibited "the classic signs of impairment."

¶ 25                                    c. Lieutenant Blackman

¶ 26        Lieutenant Blackman of the Monmouth Police Department testified to four

separate incidents involving defendant that had taken place in June 2014, April 2022, November 2023, and March 2024. Blackman first testified to the June 2014 incident. He explained that defendant's Hispanic neighbor had called the police to report "a highly intoxicated white male had came [*sic*] into their yard during a family gathering and was causing a disturbance. [Defendant] was making comments about them being Hispanic, asking them if they're even from here or what they're doing here." When police arrived at the neighbor's house and attempted to arrest defendant, "he had kicked [an officer's] hand while they were attempting to secure him in the back seat of the squad car." Defendant was later charged with "aggravated battery, resisting arrest, trespassing, *** littering[,] and public intoxication." Defendant was ultimately convicted of resisting a peace officer.

¶ 27 Next, Blackman testified to the April 2022 incident, which led to a "19-year-old woman," who was friends with defendant's son, reporting that defendant had sexually assaulted her. Blackman testified the 19-year-old woman reported "partying" with defendant and his friends at defendant's residence. At some point in the night, "she went to [defendant's] bed and passed out because she had too much to drink. *** [S]he was awoken later on in the morning with [defendant] on top of her having sexual intercourse with her." Defendant was ultimately convicted of permitting a minor to become intoxicated.

¶ 28 Blackman then testified to "another incident wherein police were called out to [defendant's] residence on or about November of 2023." According to Blackman, Gibbs had called the police and indicated she and defendant "had some kind of argument and [defendant] had sent her pictures, text messages of her clothes in a burn pit and then more pictures of them— of her clothing on fire." Police officers went to defendant's residence to investigate the report and confirmed "that there was [*sic*] burnt clothes in a smoldering fire." The police also spoke

with Gibbs as part of their investigation. She "reported a domestic battery that had occurred a few hours prior in which [defendant] had threw [*sic*] a table at her and knocked her to the ground and held her there. And then eventually one of [defendant's] daughters broke up the fight."

¶ 29 Finally, Blackman testified to an event that occurred on March 21, 2024, which involved defendant "having in-person visitation" with Gibbs in the Warren County jail "on a recorded phone line." During the visit, Gibbs informed defendant she had been subpoenaed to testify against him in case No. 24-CF-12. Defendant told Gibbs in response "that she didn't have to show up to court just because she was subpoenaed," and he further stated, "if you do show up, you can plead the Fifth or just say, No comment."

¶ 30 2. *Defendant's Sentencing Argument*

¶ 31 Defendant did not present any evidence at the sentencing hearing. However, he did argue that certain mitigating factors should be considered by the trial court. Specifically, defendant argued that his conduct did not cause or threaten serious harm to any of the victims in either case, nor had he contemplated that his conduct would cause such harm. Further, defense counsel argued that defendant's intoxicated state at the time he committed the various offenses described by the State's witnesses should be considered in mitigation, stating, in part, as follows:

> "Both officers testified that on the cases leading to the prior convictions that [the State] brought up, when they arrived on scene, my client was intoxicated at that time by both alcohol and cocaine on one occasion. He simply can't control himself when he's drinking. And I don't know that he's ever been arrested or gotten into trouble when he hasn't been intoxicated. And again, Judge, we're not—we're simply not using that as an excuse. What I'm trying to convey is that my client needs serious help in the form of inpatient treatment."

Lastly, defense counsel argued defendant's criminal history should be considered in mitigation, noting that although "[h]e's had plenty of law enforcement involvement, *** we have to remember, he's only had one felony conviction ever."

¶ 32                    3. *The Trial Court's Imposition of Sentence*

¶ 33          In announcing its sentencing decision, the trial court began by addressing a section of the PSI related to defendant's substance use and mental health history. Specifically, the court highlighted a portion of the PSI indicating that although defendant had "met [the] criteria for alcohol use disorder mild" and been "scheduled for treatment planning," he had nonetheless been "unsuccessfully discharged from treatment due to lack of contact." The court then stated:

> "The failure to seek or continue with treatment once begun is not an indication that no problem exists, but it does indicate the extent to which an individual may have or may not have resolve to try to address a problem and to try to get past it and in the case of alcohol abuse, that would be to abstain from alcohol."

The court then addressed the statutory mitigating and aggravating factors it had considered in reaching its sentencing determination. The court found in aggravation that defendant's conduct had caused serious bodily harm to I.M.R., but it also noted that his conduct had not caused the same harm to Deputy Rhoades. The court further found in aggravation the need to deter "another parent [from] chok[ing] their child or caus[ing] serious harm." In addressing defendant's mitigation arguments concerning his felony record and his intoxicated state at the time of the various offenses, the court stated as follows:

> "Stepping aside for just a moment from these factors, I guess the question

would boil down to as far as one of the factors is concerned, maybe not, if a person is intoxicated, either by the consumption of alcohol or the ingestion of other substances, does that somehow act to ameliorate their conduct? Can we excuse or give consideration to, Oh, you know, he was or she was drunk at the time? So we need to take that into consideration. I have to take that with a grain of salt because we're all ultimately responsible for our knowing conduct, our intentional conduct and the conduct which we could by the exercise of just ordinary thinking and reasoning know and appreciate what is likely to flow from the conduct in which we engage.

The fact that the Defendant doesn't have a long history of felony convictions to me is a nonissue. The Court is not going to place any weight on that whatsoever."

Lastly, the court explicitly stated it was "not able to determine and w[ould] not state that it ha[d] concluded that the Defendant *** engaged in conduct which is not likely to recur."

¶ 34    After providing its reasoning and declining to impose another term of probation, the trial court announced its sentencing decision in case No. 21-CF-35: five years' imprisonment for aggravated battery and two years' imprisonment for resisting a peace officer, with the sentences to run concurrently. In case No. 24-CF-12, the court sentenced defendant to concurrent sentences of seven years' imprisonment for aggravated domestic battery and three years' imprisonment for criminal damage to property and for each count of domestic battery. The court ordered the sentences imposed in case No. 21-CF-35 to run concurrently with those imposed in case No. 24-CF-12.

¶ 35                    D. Postsentencing Proceedings

¶ 36        In case No. 24-CF-12, defendant filed a motion for a new trial in which he

challenged the sufficiency of the State's evidence. Defendant did not include any argument

concerning the one-act, one-crime doctrine in his motion. The trial court denied defendant's

motion. Defendant also filed a motion to reconsider sentence in both of his cases, arguing the

court had imposed an excessive sentence. The court denied defendant's motions.

¶ 37        This consolidated appeal followed.

¶ 38                              II. ANALYSIS

¶ 39        On appeal, defendant argues (1) his convictions for aggravated domestic battery

and domestic battery of I.M.R. violate the one-act, one-crime doctrine and (2) the trial court

imposed an excessive sentence.

¶ 40                    A. The One-Act, One-Crime Doctrine

¶ 41        First, defendant argues his convictions for aggravated domestic battery and

domestic battery of I.M.R. violate the one-act, one-crime doctrine because they are based on

precisely the same physical act. Specifically, defendant argues, "[T]he same act of choking

I.M.R. served as the basis for both aggravated domestic battery and domestic battery convictions.

Since the two charges are not based on separate, distinguishable acts, the lesser offense must be

vacated." The State disagrees, arguing instead that even though defendant's "actions occurred

one after another, the acts are separate and distinct acts."

¶ 42        Defendant acknowledges he forfeited the instant claim by failing to raise it in his

motion for a new trial. See, *e.g.*, *People v. Woods*, 214 Ill. 2d 455, 470 (2005) (failure to include

a specific issue in a posttrial motion generally results in the forfeiture of that issue for review).

Nonetheless, he requests that we review it under the second prong of the plain-error doctrine.

¶ 43        "Although the one-act, one-crime rule is not of constitutional dimension, its

- 10 -

purpose is to prevent the prejudicial effect that could result in those instances where more than one offense is carved from the same physical act." *People v. Smith*, 2019 IL 123901, ¶ 14. In light of this purpose, our supreme court has repeatedly held that "an alleged one-act, one-crime violation and the potential for a surplus conviction and sentence affects the integrity of the judicial process, thus satisfying the second prong of the plain error rule." *People v. Harvey*, 211 Ill. 2d 368, 389 (2004); see *Smith*, 2019 IL 123901, ¶ 14; *People v. Coats*, 2018 IL 121926, ¶ 10; *People v. Nunez*, 236 Ill. 2d 488, 493 (2010); *People v. Artis*, 232 Ill. 2d 156, 168 (2009). Because our supreme court has made it clear the instant claim satisfies the second prong of the plain-error doctrine, we will review *de novo* whether defendant's multiple convictions related to I.M.R. constitute a clear or obvious violation of the one-act, one-crime doctrine. See *People v. Johnson*, 2024 IL 130191, ¶ 44 ("The first step in the plain error analysis is to determine whether a clear or obvious error occurred."); see also *Coats*, 2018 IL 121926, ¶ 12 ("Whether a violation of the [one-act, one-crime] rule has occurred is a question of law, which we review *de novo*.").

¶ 44    In *People v. King*, 66 Ill. 2d 551, 560, 566 (1977), our supreme court set forth the one-act, one-crime doctrine, a rule to determine the propriety of entering multiple convictions and concurrent sentences for offenses committed "during the same transaction" or "as part of a single course of conduct." The court in *King* described the doctrine as follows:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts.

- 11 -

'Act,' when used in this sense, is intended to mean any overt or outward manifestations which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." *Id.* at 566.

Our supreme court has explained that a proper application of the doctrine involves the following "two-step analysis":

"First, the court must determine whether the defendant's conduct involved multiple acts or a single act. Multiple convictions are improper if they are based on precisely the same physical act. Second, if the conduct involved multiple acts, the court must determine whether any of the offenses are lesser-included offenses. If an offense is a lesser-included offense, multiple convictions are improper."

*People v. Miller*, 238 Ill. 2d 161, 165 (2010).

¶ 45 For purposes of resolving the instant claim, we accept the State's argument that under the first step in the one-act, one-crime analysis, defendant's conduct involved multiple acts—(1) the act of "attempting to throw I.M.R. down [the] stairs" and (2) the act of "strangling her." We note here that the two acts described by the State were part of a "series of incidental or closely related acts" (*King*, 66 Ill. 2d at 566) and committed "as part of a single course of conduct" (*id.* at 565). Specifically, I.M.R. testified that the act of strangulation occurred "[r]ight after [defendant had] tried to throw [her] down the stairs." This testimony indicates that the first act was followed closely by the second act. Thus, the two acts were "closely related." *Id.* at 566. Having determined that defendant's conduct involved two separate yet still "closely related acts" (*id.* at 566) arising from the same transaction, we proceed to the second step in the analysis and

- 12 -

"determine whether any of the offenses are lesser-included offenses." *Miller*, 238 Ill. 2d at 165.

¶ 46    "When the issue of lesser-included offenses arises in the context of a one-act, one-crime challenge, we apply the abstract elements approach." *Smith*, 2019 IL 123901, ¶ 37. "Under the abstract elements approach, a comparison is made of the statutory elements of the two offenses." *Miller*, 238 Ill. 2d at 166. "If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *Id.* "In other words, it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Id.*

¶ 47    Defendant was convicted of domestic battery of I.M.R. under section 12-3.2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/12-3.2(a)(2) (West 2024)) and aggravated domestic battery of I.M.R. under section 12-3.3(a-5) (*id.* § 12-3.3(a-5)). A person commits domestic battery if he knowingly and without legal justification "[c]auses bodily harm" or "[m]akes physical contact of an insulting or provoking nature with any family or household member." *Id.* § 12-3.2(a)(1)-(2). "A person who, *in committing a domestic battery*, strangles another individual commits aggravated domestic battery." (Emphasis added.) *Id.* § 12-3.3(a-5).

¶ 48    In applying the abstract elements approach to the identified offenses, it is clear that domestic battery is a lesser-included offense of aggravated domestic battery based on strangulation. This is because the commission of a domestic battery under section 12-3.2(a) of the Code (*id.* § 12-3.2(a)) is a necessary element of aggravated domestic battery under section 12-3.3(a-5)—making it impossible to commit the latter offense without having also committed the former offense. See *id.* § 12-3.3(a-5); see also *People v. Evans*, 2025 IL App (3d) 240575-U, ¶ 17 ("The misdemeanor domestic battery is certainly a lesser-included offense because the aggravated domestic battery offense requires a showing of the misdemeanor charge

with the added element of strangulation."); *People v. Kiture*, 2021 IL App (4th) 200629-U, ¶ 22 ("Domestic battery is a lesser-included offense of aggravated domestic battery.").

¶ 49 Accordingly, for the reasons discussed, we conclude defendant's convictions on counts I and II constitute a violation of the one-act, one-crime doctrine, which, as held by the supreme court, satisfies the second prong of the plain-error doctrine. See *King*, 66 Ill. 2d at 566 ("Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses."); see also *Harvey*, 211 Ill. 2d at 389 ("[A]n alleged one-act, one-crime violation *** satisf[ies] the second prong of the plain error rule."). Thus, we vacate defendant's conviction for domestic battery of I.M.R. (count II).

¶ 50 As a final matter, we point out that defendant technically forfeited any argument that domestic battery is a lesser-included offense of aggravated domestic battery by failing to raise it as an alternative argument in his opening brief and instead raising it for the first time in his reply brief. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief."). "However, forfeiture is a limitation on the parties and not the reviewing court, and we may overlook forfeiture where necessary to obtain a just result or maintain a sound body of precedent." *People v. Holmes*, 2016 IL App (1st) 132357, ¶ 65. Here, we believe it would be unjust for defendant's multiple convictions to stand despite their clear violation of the one-act, one-crime doctrine—a violation which the supreme court has repeatedly held constitutes second-prong plain error. See *Harvey*, 211 Ill. 2d at 389; *Smith*, 2019 IL 123901, ¶ 14; *Coats*, 2018 IL 121926, ¶ 10; *Nunez*, 236 Ill. 2d at 493; *Artis*, 232 Ill. 2d at 168. Accordingly, to obtain a just result, we find it appropriate to overlook defendant's technical forfeiture in vacating his conviction for domestic battery of I.M.R. See *King*, 66 Ill. 2d at 566;

see also *Holmes*, 2016 IL App (1st) 132357, ¶ 65.

¶ 51                              B. Excessive Sentence

¶ 52          Next, defendant argues the trial court abused its discretion by imposing an excessive sentence. Specifically, defendant argues as follows: "[T]he trial court abused its discretion by failing to consider mitigating factors, including [his] intoxicated state at the time of the offenses and his lack of a lengthy felony criminal record. Instead, the court placed excessive weight on punishment over rehabilitation, resulting in an unduly harsh sentence." We note the parties agree that defendant's sentences are within the applicable statutory range.

¶ 53          The Illinois Constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). "The trial court has broad discretionary powers in imposing a sentence because it is generally in a better position than the reviewing court to determine the appropriate sentence by weighing such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* at 528-29. "A sentencing court is not required to give greater weight to [a] defendant's rehabilitative potential than to the seriousness of the offense. [Citation.] In fact, the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. "A

sentence that falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *Hernandez*, 319 Ill. App. 3d at 529.

¶ 54 Here, we reject defendant's argument that the trial court failed to consider his "intoxicated state at the time of the offenses and his lack of a lengthy felony criminal record." Indeed, a review of the transcript from the sentencing hearing shows the court not only squarely addressed each factor, but it even provided a detailed explanation as to why it had concluded that neither applied in mitigation.

¶ 55 Specifically, in addressing defendant's argument concerning his intoxicated state at the time of the offenses, the trial court began by highlighting the fact that, according to the PSI, defendant had "met [the] criteria for alcohol use disorder mild" and been "scheduled for treatment planning." Nonetheless, he had been "unsuccessfully discharged from treatment due to lack of contact." The court found defendant's unsuccessful discharge from treatment revealed an unwillingness on his part to even attempt to address the driving force behind his repeated commission of criminal offenses. Then, the court squarely addressed defendant's argument and its reason for rejecting it, stating, "[W]e're all ultimately responsible for our knowing conduct, our intentional conduct and the conduct which we could by the exercise of just ordinary thinking and reasoning know and appreciate what is likely to flow from the conduct in which we engage." The court's remarks show it rejected defendant's attempt to portray his intoxicated state as a mitigating factor because the State's evidence demonstrated a documented history of defendant's alcohol abuse leading to violent outbursts and the commission of criminal offenses, usually perpetrated against police officers, household members, or both. Despite defendant's documented history, he yet again chose to become intoxicated on the dates in question and, foreseeably, this knowing decision ultimately led to additional violent outbursts and the

commission of additional criminal offenses—offenses which were, unsurprisingly, committed against both a police officer and members of his household. Thus, the court's handling of defendant's intoxicated-state argument was not at all unreasonable.

¶ 56 Turning to defendant's argument regarding his "lack of a lengthy felony criminal record," we find the trial court did not abuse its discretion in stating the following: "The fact that the Defendant doesn't have a long history of felony convictions to me is a nonissue. The Court is not going to place any weight on that whatsoever."

¶ 57 First, we note that a "lack of a lengthy felony criminal record," as characterized by defendant, is not a statutory mitigating factor. Rather, the sentencing statute provides that it is a mitigating factor when "[t]he defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the present crime." 730 ILCS 5/5-5-3.1(a)(7) (West 2024). Obviously, this factor does not apply to defendant's situation. According to the PSI, and excluding the instant offenses, defendant has been twice convicted of resisting a peace officer, twice convicted of battery, and once convicted of permitting a minor to become intoxicated. Moreover, after being sentenced to probation in case No. 21-CF-35, defendant not only violated the terms of his sentence by testing positive for illegal drugs, he also violated them when he was charged with the following criminal offenses: (1) aggravated battery against two separate victims, (2) the offenses in case No. 24-CF-12, and (3) communicating with a witness. Given defendant's extensive—and mostly violent—criminal history, coupled with his repeated probation violations, it was not unreasonable for the trial court to reject defendant's "lack of a lengthy felony criminal record" as a mitigating factor.

¶ 58 Accordingly, we find the trial court did not fail to properly consider the mitigating factors identified by defendant, nor did it impose an excessive sentence.

¶ 59                                    III. CONCLUSION

¶ 60          For the reasons stated, we vacate defendant's conviction for domestic battery of

I.M.R. and otherwise affirm the trial court's judgment.

¶ 61          Affirmed in part and vacated in part.

¶ 62          JUSTICE DeARMOND, concurring in part and dissenting in part:

¶ 63          I concur with the majority's finding that defendant failed to establish the trial

court imposed an excessive sentence. I respectfully dissent from its conclusion his convictions

violated the one-act, one-crime doctrine. I would find this issue forfeited under the strictures

imposed by Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020).

¶ 64          As the majority observes, to determine whether a one-act, one-crime violation

occurred, a reviewing court " 'must determine whether the defendant's conduct involved

multiple acts or a single act,' " because two convictions cannot be supported by " 'precisely the

same physical act.' " *Supra* ¶ 44 (quoting *Miller*, 238 Ill. 2d at 165). If the defendant's conduct

involved multiple acts, "the court must determine whether any of the offenses are lesser-included

offenses." *Miller*, 238 Ill. 2d at 165. If so, "multiple convictions are improper." *Miller*, 238 Ill.

2d at 165.

¶ 65          Defendant's conduct involved multiple acts, and the domestic battery charge was

not a lesser-included offense because it was based on separate and distinct conduct from the

aggravated domestic battery charge. Count I alleged defendant strangled I.M.R. Count II alleged

defendant grabbed I.M.R. "by the neck and caus[ed] her head to strike the wall" as he attempted

to throw her down the stairs. On appeal, defendant argues the two offenses were "based on the

same continuous act" because they "both stem from a single physical act against [the victim]."

The trial testimony indicates otherwise.

¶ 66        L.R. testified she saw defendant holding I.M.R. "up against the wall" while he "had ahold of her by her throat." After several bystanders tried to make defendant stop, "[defendant] eventually let go of [I.M.R.] and then [he] was screaming at her to leave the house and she wouldn't, so he grabbed ahold of her by her hair and her hoodie trying to throw her down the stairs." Similarly, E.Y. witnessed defendant trying "to throw [I.M.R.] out the backdoor" while "grab[bing] her by her neck." E.Y. also saw defendant choking I.M.R. with both hands around her neck, which occurred "after [defendant] had tried to throw her out the backdoor." E.Y. testified, "I think [defendant] had calmed down for a second or he was just telling her to leave or, you know, just to get out, and then that's when he had just started putting his hands on her around her neck again." Additionally, K.Y. testified he saw defendant "with his two hands around [I.M.R.'s] throat holding her against the wall." When K.Y. retrieved his phone to record defendant's actions, defendant released I.M.R and told her to get out of the house. After I.M.R. begged defendant to permit her to gather her belongings, defendant "grab[bed] her by the collar, lift[ed] her up in the same spot that he choked her ***, *** [held] her against the wall and slam[med] her." K.Y. testified this slam took place after the strangulation he previously described.

¶ 67        All these witnesses testified defendant first choked I.M.R. Defendant then briefly calmed down and let her go before subsequently grabbing her by the neck, collar, or hair and attempting to throw her down the stairs. This testimony describes multiple overt acts that would support different offenses. See *King*, 66 Ill. 2d at 566 (" 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense.").

¶ 68        Our supreme court "ha[s] explained that a person can be guilty of two offenses when *a common act* is (1) part of both offenses or (2) part of one offense and the only act of the

other offense." (Emphasis added.) *Smith*, 2019 IL 123901, ¶ 18. In other words, "a defendant can be convicted of two offenses even when they share a common act, as long as there is *an additional act* that can support a separate offense." (Emphasis added.) *Coats*, 2018 IL 121926, ¶ 26. Here, we have two separate actions—a choke and a slam. These distinct actions did not share a common act. See *Smith*, 2019 IL 123901, ¶ 18. Moreover, each action contained an additional act distinguishing it from the other, as the initial choke involved strangulation, while the slam was accompanied by defendant's effort to throw I.M.R. down the stairs. See *Coats*, 2018 IL 121926, ¶ 26.

¶ 69        Importantly, the charging document identified which distinct action supported which charge. See, *cf.*, *People v. Crespo*, 203 Ill. 2d 335, 342-46 (2001) (finding a one-act, one-crime violation occurred where the defendant stabbed his victim three times, but the State did not differentiate between the different stab wounds when charging the defendant with three offenses); *People v. Beltran*, 327 Ill. App. 3d 685, 693 (2002) (finding a one-act, one-crime violation occurred where the defendant and his accomplice fired multiple gunshots at multiple victims, but "as to each victim, the indictment did not specify which shots supported which charge"). I would agree with the majority if counts I and II were supported by the same action, but this is not the case. Count I is based on defendant's strangulation of I.M.R., while count II is based on defendant slamming I.M.R. against the wall and attempting to throw her down the stairs. Based on the testimony discussed above, these were distinct actions that could support multiple offenses. See *King*, 66 Ill. 2d at 566.

¶ 70        The majority concludes the acts "were part of a 'series of incidental or closely related acts' [citation] and committed 'as part of a single course of conduct.' " *Supra* ¶ 45 (quoting *King*, 66 Ill. 2d at 565-66). In *King*, our supreme court considered a case involving

convictions for rape and burglary with intent to commit a rape. *King*, 66 Ill. 2d at 555. After discussing the one-act, one-crime rule in the context of consecutive and concurrent sentences, the court observed, "A distinction must be made between the imposition of consecutive versus concurrent sentences for offenses arising from the same conduct. The prejudicial effect of the double punishment in the form of consecutive sentences for crimes arising from multiple acts *motivated by essentially the same criminal objective* is apparent." (Emphasis added.) *King*, 66 Ill. 2d at 565. The court concluded, "[W]e are aware of no constitutional limitations against multiple convictions and concurrent sentences for different offenses arising from multiple acts which are incidental to or motivated by some greater criminal objective." *King*, 66 Ill. 2d at 565. The court noted, "[M]ultiple convictions and consecutive sentences have been permitted against claims of double jeopardy for offenses based on a single act but requiring proof of different facts." (Emphasis omitted.) *King*, 66 Ill. 2d at 565.

¶ 71        Thus, our supreme court has determined a defendant can be found guilty of two separate offenses, regardless of how closely related in time they may be, provided there is a change in the criminal objective. See *King*, 66 Ill. 2d at 565. Under the majority's reasoning, defendant could not be convicted of committing any additional acts of domestic battery against I.M.R. before or after the strangulation. This runs contrary to *Miller* and *King*, which found " '[m]ultiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, *despite the interrelationship of those acts*.' " (Emphasis added.) *Miller*, 238 Ill. 2d at 165 (quoting *King*, 66 Ill. 2d at 566). This is because, in instances where the abstract elements approach to the one-act, one-crime rule applies, "it must be impossible to commit the greater offense without necessarily committing the lesser offense." *Miller*, 238 Ill. 2d at 166.

¶ 72        Here, defendant committed aggravated domestic battery by strangling I.M.R. He committed domestic battery by grabbing her, slamming her against the wall, and trying to throw her down the stairs. Both offenses contained actions distinct from each other. Therefore, it was not impossible to commit aggravated domestic battery, the greater offense, without necessarily committing domestic battery, the lesser offense. See *Miller*, 238 Ill. 2d at 166. It does not matter that domestic battery is technically a lesser-included offense because the charges were supported by separate actions that were not part of a "series of incidental or closely related acts" committed "as part of a single course of conduct." (Internal quotation marks omitted.) *King*, 66 Ill. 2d at 565-66.

¶ 73        For these reasons I dissent from the majority's finding that a one-act, one-crime violation occurred. I would find this issue forfeited and affirm the trial court's judgment and sentence.