NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 241525-U

NO. 4-24-1525

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 11, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| DWAYNE K. TAYLOR, | ) | No. 18CF491 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Rudolph M. Braud Jr., |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Steigmann and Justice Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court affirmed, concluding the trial court properly dismissed defendant's *pro se* postconviction petition at the first stage of proceedings.

¶ 2    Defendant, Dwayne K. Taylor, appeals from the Sangamon County circuit court's first-stage dismissal of his *pro se* postconviction petition. Defendant argues his petition stated the gist of two claims: (1) the denial of his right to an impartial jury and (2) ineffective assistance of trial and appellate counsel. The State responds the court properly denied defendant's petition and no error occurred. We affirm.

¶ 3                                   I. BACKGROUND

¶ 4    The underlying facts of this case were discussed in detail on direct appeal in *People v. Taylor*, 2023 IL App (4th) 220381, ¶¶ 4-40. Accordingly, we discuss only those facts necessary to resolve the issues presented in this appeal.

¶ 5        In May 2018, the State charged defendant with being an armed habitual criminal (AHC) (720 ILCS 5/24-1.71(a) (West 2018)), unlawful possession of a weapon by a felon (*id.* § 24-1.1(a)), and aggravated battery with a firearm (*id.* § 12-3.05(e)(1)). The charges stemmed from an altercation wherein defendant allegedly shot Artemis Hunter in the arm with a revolver.

¶ 6        The trial court conducted defendant's jury trial in November 2021. Following the State's opening statement, defense counsel reserved his opening statement.

¶ 7        At trial, evidence showed a custodian recovered a revolver near the elementary school where defendant was pulled over and arrested with his girlfriend, Whitney Haynes, on the date of the shooting. During defendant's testimony, he explained Hunter came to his door earlier that day asking for Haynes and for his money. Defendant responded Haynes was not home and then claimed, "[Hunter] ma[de] an upward motion, so I grabbed his hand, then a pop goes off, pop, and he drops his gun and runs down the street." Defendant initially claimed Hunter had his hand in his pocket, and when he took it out, a holster fell out. As he grabbed for Hunter's hand, he heard a "pop," and Hunter dropped the gun and ran. Defendant picked up the gun and holster and drove Hunter's car, which was still running in the parking lot, to a different location. Defendant then returned to his apartment and drove himself and Haynes in Haynes's vehicle to meet his friend, Ivan Lee. Lee picked defendant and Haynes up in his vehicle, and they were later pulled over by law enforcement on South Grand Avenue, where defendant was arrested. Defendant admitted he possessed the gun from the altercation at this time and disposed of it at some point during his arrest.

¶ 8        In a videorecorded interview with police, defendant claimed he shot Hunter in the arm after Hunter "swung" at him. In body-worn camera video recorded while defendant waited in a booking area, defendant admitted to disposing of a revolver while being arrested. He also stated

the size of the revolver "fooled" people because while it looks like it only holds two shots, it has the capacity for five. Defendant further stated Hunter tried to "steel" him, but defendant had a "shorty" in his back pocket. As he said this, defendant pantomimed drawing a revolver from his back pocket to his hip and pulling the trigger. Defendant then made shooting sounds while exclaiming, "Get thrown, bitch!", "Scram!", and "I gotta OK Corral this motherfucker!"

¶ 9 During defendant's cross-examination, he admitted he did not tell detectives this story when they interviewed him. Defendant asserted the story he told the police was not the truth and conceded it was different from his trial testimony. Furthermore, defendant denied intentionally shooting Hunter or seeing the revolver until the date of the shooting. Additionally, defendant claimed when he stated that he had a "shorty" in his pocket, he meant his girlfriend. Defendant also denied talking to Hunter about whether Hunter would testify.

¶ 10 During rebuttal, the trial court admitted into evidence audio recordings of defendant's telephone conversations from the county jail, which were published to the jury. In respective calls with his mother and girlfriend, defendant informed them that he spoke with Hunter, who assured him he would not testify at trial. Additionally, one of the female callers stated someone named "Terrence" advised her defendant needed to act like he and Hunter had a "tussle" and the revolver belonged to Hunter.

¶ 11 Following the close of evidence, defense counsel declined to present a closing argument. He explained, outside the presence of the jury, his decision was based on the trial court's denial of his motions for jury instructions on self-defense and the affirmative defense of necessity.

¶ 12 During jury deliberations, the jury asked the trial court, via a handwritten note signed by one of the jurors, "Could we get recording (+ date) of phone calls from jail house from [defendant]?", and requested the dates of the recordings. The following colloquy ensued:

"MR. WRIGHT [(STATE'S ATTORNEY)]: I don't believe there was a demonstrative or another piece of evidence that specifically lists the dates outside of the digital, you know, screen when the thumb drive is plugged in, so there isn't a piece of paper that we could identify the exhibits that has that on it, but we can certainly play the exhibit that was played in open court, and if we wanted—I mean, I don't have any objection to printing that out and having the bailiff identify what the dates are, but I don't know if Mr. Elmore has any thought on it, but the dates to me are less than an issue of just playing the recording, and if they really want the dates, they can ask another question, I guess.

THE COURT: Mr. Elmore?

MR. ELMORE [(DEFENSE COUNSEL)]: I agree, Judge. They're entitled to listen to it.

I think my suggestion would be just let them listen to the recordings. If they're still hung up on the dates, we can give them dates at a later time because the dates, I believe, are set forth on the—

MR. WRIGHT: They're on all but the last one, so they're—all of them except the last one are May 1st through May 5, 2018. The last one is October 5th, 2021, but all of them except the last one are identified in the name of the file with that date.

THE COURT: I mean, couldn't you easily when you walk them in, they can walk up to that board and see when the dates are, and you could just start playing it for them?

MR. WRIGHT: Yeah.

- 4 -

THE COURT: Done. That's what we're doing.

MR. ELMORE: Wait. What's the suggestion?

THE COURT: Those guys can just walk in and see where the dates are on the screen and then sit down and listen to them.

MR. WRIGHT: They can see the range of the dates.

MR. ELMORE: So you're okay with them walking around the courtroom?

THE COURT: I mean, [the bailiff's] in charge under oath right now. I swore him in.

MR. ELMORE: Okay.

THE COURT: [The bailiff's] going to let them walk up to the board, see what the dates are, and then play it.

[Mr. Elmore], are you okay with that?

MR. ELMORE: I think I am. Which one doesn't have a date?

MR. WRIGHT: It's the last one. *** I think we should probably, if we're going to let them know what the other ones are for context, it should be somehow identified that that's October 5th.

THE BAILIFF: Just write that on a sticky note that it's October 5th, and I'll tell them, then, that last one's October 5th.

MR. WRIGHT: And I said on the record that it's October 5th.

THE COURT: We're still on the record.

MR. ELMORE: I'm good with that."

Thereafter, the record states the court was in recess for jury deliberations. When the record resumes, the trial court states, "Bring them in." The record then indicates the jury reentered the

- 5 -

courtroom to deliver the verdict.

¶ 13 The jury found defendant guilty on all counts.

¶ 14 After the trial court found defendant's AHC conviction merged with the unlawful possession of a weapon by a felon conviction and defendant was eligible for extended-term sentencing, it sentenced defendant to natural life in prison on both the AHC and aggravated battery with a firearm charges.

¶ 15 On direct appeal, defendant argued the trial court erroneously (1) denied his requests for jury instructions on the affirmative defenses of self-defense and necessity and (2) considered his 2005 armed robbery conviction as both a predicate offense for his AHC conviction and to adjudicate him a habitual offender, resulting in an improper double enhancement. *Taylor*, 2023 IL App (4th) 220381, ¶ 53. This court disagreed and affirmed the trial court's judgment. *Id.*

¶ 16 In October 2024, defendant *pro se* filed a postconviction petition, asserting, *inter alia*, he was denied his constitutional right to an impartial jury and his trial and appellate counsel were ineffective. Specifically, defendant alleged the trial court impermissibly allowed the jury to deliberate inside the courtroom in the presence of the bailiff in violation of section 1 of the Jury Secrecy Act (705 ILCS 315/1 (West 2020)) and his constitutional rights (see U.S. Const., amends. V, VI, XIV). Defendant further argued trial counsel was ineffective for failing to give an opening statement at trial and appellate counsel was ineffective for failing to raise this issue on direct appeal. Approximately two weeks later, the court summarily dismissed defendant's petition, concluding the claims therein were positively rebutted by the record and it was therefore frivolous and patently without merit.

¶ 17 This appeal followed.

¶ 18                                    II. ANALYSIS

¶ 19        On appeal, defendant argues the trial court erred when it summarily dismissed his postconviction petition. Specifically, defendant contends his petition stated the gist of two claims: (1) the denial of his right to an impartial jury and (2) ineffective assistance of trial and appellate counsel. The State responds the court properly dismissed the petition as frivolous and patently without merit. We affirm.

¶ 20                            A. Postconviction Proceedings

¶ 21        The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-9) (West 2024)) permits a criminal defendant to collaterally attack his conviction where it resulted from a violation of his constitutional rights. *People v. Tate*, 2012 IL 112214, ¶ 8. Proceedings under the Act are divided into three stages. *Id.* ¶ 9. At the first stage, the defendant initiates the proceedings by filing a petition in the trial court. 725 ILCS 5/122-1 (West 2024). The defendant must attach affidavits or other evidence in support of the petition or explain why the same are not attached. *Id.* § 122-2. The purpose of this requirement is "is to establish that a petition's allegations are capable of 'objective or independent corroboration.' " *People v. Delton*, 227 Ill. 2d 247, 254 (2008) (quoting *People v. Hall*, 217 Ill. 2d 324, 333 (2005)). Although the defendant need only include a "limited amount of detail," he is not "excused from providing any factual detail at all surrounding the alleged constitutional deprivation." (Internal quotation marks omitted.) *Id.* Accordingly, "the affidavits and exhibits which accompany a petition must identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *Id.* Therefore, "the failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." (Internal quotation marks omitted.) *Id.* at 255.

¶ 22 Within 90 days of filing, the trial court may summarily dismiss the petition if it concludes it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2024). A petition is frivolous or patently without merit only if it has no arguable basis in law or fact. *Tate*, 2012 IL 112214, ¶ 9. Meritless legal theories include ones completely contradicted by the record, while fanciful factual allegations may be fantastic or delusional. *People v. Hodges*, 234 Ill. 2d 1, 16-17 (2009). The court must construe the petition liberally and take all well-pleaded facts as true. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). This is considered a "low" threshold, and the defendant need only state the "gist" of a constitutional claim at this stage of proceedings. *Hodges*, 234 Ill. 2d at 9.

¶ 23 If the petition is not dismissed at the first stage of proceedings, the trial court advances the petition to the second stage, wherein counsel may be appointed to represent the defendant and the State may file a motion to dismiss the petition or file an answer. See 725 ILCS 122-2.1(b), 122-4, 122-5 (West 2024). If the court finds defendant has made a " 'substantial showing' " of a constitutional violation, it will advance the petition to a third-stage evidentiary hearing. *Tate*, 2012 IL 112214, ¶ 10. This court reviews the dismissal of a postconviction petition at the first stage of proceedings *de novo*. *Id.*

¶ 24                                   B. Impartial Jury

¶ 25 We first address defendant's argument the trial court erred when it summarily dismissed his petition because it stated the gist of a claim he was denied his constitutional right to an impartial jury. Specifically, defendant contends Bailiff Phil Coady was present during deliberations when the court allowed the jury back into the courtroom to replay audio evidence. Defendant further alleges this had a chilling effect on the jury, and further, that Coady may have participated in the deliberations.

¶ 26    In response, the State asserts the trial court properly found this claim was meritless for several reasons. First, it was waived under the invited error doctrine when defendant's trial counsel agreed to permit the jury to review the audio evidence in the manner he now challenges. Second, defendant forfeited this claim when he failed to raise it on direct appeal. Finally, defendant failed to provide affidavits or other evidence in support of his claim, as required by section 122-2 of the Act (725 ILCS 5/122-2 (West 2024)).

¶ 27    "It is a basic principle of our justice system that jury deliberations shall remain private and secret." *People v. Johnson*, 2015 IL App (3d) 130610, ¶ 17. To that end, "the primary if not exclusive purpose of jury privacy and secrecy is to protect the jury's deliberations from improper influence." *United States v. Olano*, 507 U.S. 725, 737-38 (1993). An intrusion into the jury's deliberations by a nonjuror constitutes reversible error only when the defendant establishes he is prejudiced by that intrusion. See *People v. McLaurin*, 235 Ill. 2d 478, 497-98 (2009). However, "[t]he trial court has discretion to determine whether to grant or deny the jury's request to review evidence" during deliberations. *People v. Rouse*, 2014 IL App (1st) 121462, ¶ 77. In certain instances, this discretion extends to permitting the jury to review such evidence in the presence of nonjurors in the courtroom. See *id.* ¶ 78 (concluding the trial court did not abuse its discretion when it permitted jurors to review requested surveillance video in the courtroom, in the presence of both parties and the court, after considering possible alternatives and advising jurors not to engage in deliberations while in the courtroom).

¶ 28    Additionally, "[w]aiver is the intentional relinquishment of a known right." *People v. Bowens*, 407 Ill. App. 3d 1094, 1098 (2011). "It is axiomatic that a defendant who acquiesces to an alleged error cannot later argue that he or she was prejudiced by the error." *People v. Houston*, 2024 IL App (3d) 210324, ¶ 23.

¶ 29        Here, we agree defendant failed to state the gist of a claim that Bailiff Coady's *mere presence* in the courtroom while jurors viewed the requested audio evidence deprived him of an impartial jury because defendant waived any challenge to this procedure when his counsel agreed to proceed in this manner. The record shows defense counsel, the state's attorney, and the trial court engaged in a lengthy discussion regarding how best to accommodate the jurors' request to review the audio evidence. Defense counsel agreed the jurors had a right to review the evidence. When asked if he was okay with permitting Bailiff Coady to play the audio for the jury and to provide a missing date for one of the recordings via sticky note, defense counsel replied, "I'm good with that." In doing so, defense counsel affirmatively acquiesced to proceed in this manner. Accordingly, defendant waived this issue and cannot argue he was prejudiced by it. See *id.*

¶ 30        Moreover, to the extent defendant argues in his reply brief that he did not affirmatively acquiesce "to Coady participating in, or chilling, deliberations," we conclude this allegation lacks a factual basis in the record or in the attachments to defendant's petition. Following defense counsel's assent to allowing the jurors into the courtroom, the record indicates court was in recess while the jury deliberated. We can infer from the record the parties allowed and planned to have Bailiff Coady play audio evidence for the jury in the courtroom, but the record does not establish this fact. Admittedly, in their briefs, neither party denies Coady was allowed to play the audio recordings. However, defendant has failed to attach any evidence to his petition showing Coady participated in or chilled the deliberations in any way. There is nothing in the record or attachments to support defendant's claim, other than his own hunch that Coady "*may* even have participated in the deliberations making him the thirteenth juror." (Emphasis added.) Moreover, there is nothing in the record suggesting the jury engaged in any deliberations while in the courtroom. The trial court asked Coady to bring the jurors *back into the courtroom* when they

reached a verdict, indicating they did not remain in the courtroom for deliberations after reviewing the audio evidence.

¶ 31    Here, defendant was required to provide attachments to his petition showing the allegations therein are capable of "objective or independent corroboration," and he has failed to do so. *Hall*, 217 Ill. 2d at 333; see 725 ILCS 5/122-2 (West 2024). Specifically, defendant failed to attach an affidavit from Coady detailing the extent of his participation in the jury's deliberations and did not explain why said affidavit was not attached. Without more, defendant did not adequately support the allegations in his petition, as required by section 122-2 of the Act, which was therefore fatal to his claim. See 725 ILCS 5/122-2 (West 2024); see also *Delton*, 227 Ill. 2d at 255 ("[T]he failure to either attach the necessary affidavits, records, or other evidence or explain their absence is fatal to a post-conviction petition [citation] and by itself justifies the petition's summary dismissal." (Internal quotation marks omitted.)).

¶ 32                      C. Ineffective Assistance of Counsel

¶ 33    Defendant next argues the trial court erred when it summarily dismissed his petition because he stated the gist of a claim of ineffective assistance of trial and appellate counsel. Specifically, defendant asserts trial counsel was ineffective when he failed to present an opening statement or closing argument and appellate counsel was ineffective for failing to raise the same on direct appeal. The State responds defendant failed to state the gist of a claim of ineffective assistance of counsel "because the evidence at trial was overwhelming, and therefore defendant could suffer no prejudice."

¶ 34    "At the first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the

- 11 -

defendant was prejudiced." *People v. Petrenko*, 237 Ill. 2d at 490, 497 (2010). A defendant is prejudiced if there is a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different. *Id.* at 496-97. This standard applies equally to claims concerning trial and appellate counsel. *Id.* at 497. "A defendant raising a claim concerning appellate counsel 'must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful.' " *People v. Carlisle*, 2019 IL App (1st) 162259, ¶ 76 (quoting *Petrenko*, 237 Ill. 2d at 497). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Furthermore, a defendant is precluded from establishing he was prejudiced where the properly admitted evidence at trial overwhelmingly supported the guilty verdict. *Carlisle*, 2019 IL App (1st) 162259, ¶ 81. "If either prong of the *Strickland* test is not met, defendant's claim must fail." *People v. Perry*, 224 Ill. 2d 312, 342 (2007).

¶ 35        Here, it is not necessary to determine whether the respective decisions of trial and appellate counsel fell below an objective standard of reasonableness because we agree with the State the evidence at trial was sufficiently overwhelming such that defendant cannot arguably show he was prejudiced.

¶ 36        First, defendant's testimony at trial supported his conviction for AHC. Defendant testified that after his altercation with Hunter, he picked up the gun and brought it with him into his girlfriend's car. Defendant also admitted to disposing of the gun when he was eventually pulled over in Lee's vehicle and arrested. It was further undisputed defendant had previously been convicted of armed robbery in Cook County case No. 05-CR-1722301 and unlawful possession of a weapon by a felon in Sangamon County case No. 09-CF-942. Based on this record, it is not

- 12 -

arguable there was a reasonable probability that defendant would have been acquitted of AHC but for counsel's decision not to make an opening statement or closing argument.

¶ 37    Second, the evidence also overwhelmingly supported defendant's conviction for aggravated battery with a firearm. In his recorded interview with police, defendant admitted he shot Hunter in the arm after Hunter "swung at him." In the body-worn camera video, defendant explained the size of the revolver he used "fools" others because it looks like it holds only two shots, when it actually holds five. In the same video, defendant stated Hunter tried to "steel" him, but he had a "shorty" in his back pocket. As he said this, he pantomimed reaching into his back pocket and pulling the revolver to shoot Hunter from the hip, pulling the trigger. Defendant made shooting sounds and exclaimed, "Get thrown, bitch!", "Scram!", and "I gotta OK Corral this motherfucker!" Finally, in a recording of one of defendant's telephone calls from the county jail, a female caller stated someone named Terrence advised her that defendant needed to act like he and Hunter had a "tussle" and that the revolver belonged to Hunter. Although defendant claimed at trial that he was untruthful in his interview with police and in the body-worn camera video, the jury was in the best position to determine the credibility of the witnesses. *People v. Hernandez*, 319 Ill. App. 3d 520, 532-33 (2001). Based on the strength of the State's evidence, including defendant's multiple inculpatory statements to police, it is not arguable that, but for counsel's decision not to present an opening statement or closing argument, he would have been acquitted of aggravated battery with a firearm.

¶ 38    Because we conclude defendant cannot demonstrate prejudice, we find the trial court properly dismissed defendant's *pro se* postconviction petition at the first stage of proceedings. Accordingly, we affirm the court's judgment.

¶ 39                                III. CONCLUSION

¶ 40  For the reasons stated, we affirm the trial court's judgment.

¶ 41  Affirmed.