No. 3--99--0470

_________________________________________________________________

 IN THE

 APPELLATE COURT OF ILLINOIS

 THIRD DISTRICT

 A.D., 2001 

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of the 21st Judicial Circuit, 

 ) Kankakee County, Illinois

Plaintiff-Appellee, ) 

 )

v. ) No. 98--CF--569

 ) 

JOSE M. HERNANDEZ, ) Honorable

                                ) Clark E. Erickson,

Defendant-Appellant. ) Judge, Presiding

_________________________________________________________________

JUSTICE HOLDRIDGE delivered the Opinion of the Court:

_________________________________________________________________

Following a jury trial, the defendant, Jose M. Hernandez, was convicted of first degree murder (720 ILCS 5/9--1(a) (West 1998)), armed robbery (720 ILCS 5/18--2(a) (West 1998)), concealment of a homicidal death (720 ILCS 5/9--3.1(a) (West 1998)), and unlawful use of a weapon (720 ILCS 5/24--1(a)(10) (West 1998)).  He was sentenced to 30, 15, 5, and 3 years of imprisonment respectively, to be served concurrently.  On appeal, the defendant argues that the trial court erred (1) by limiting the defense’s impeachment of a State’s witness to the mere fact that the witness had a prior felony conviction rather than by identifying the specific felony, (2) by sentencing the defendant to 30 years’ imprisonment, (3) by refusing to bar the defendant’s statement given to police in violation of the Vienna Convention on Consular Relations (Vienna Convention), and (4) by admitting a prosecution witness’ prior inconsistent statements in evidence. The defendant also argues that the State failed to prove that the defendant committed first degree murder, armed robbery, and unlawful use of a weapon beyond a reasonable doubt.  We affirm.

BACKGROUND

After dark on August 19, 1998, the defendant, Jose Villalobos, and Lorena Perez were near the river in Legion Park in Kankakee.

Perez testified at trial for the State.  Her trial testimony differed from two of her earlier statements, one given to the Kankakee police and another given to Villalobos’ attorney.
(footnote: 1)  During her testimony, Perez was questioned by the prosecution about the inconsistencies between these earlier statements and her courtroom testimony.  Portions of these two prior statements were read into evidence.  Another version of events was presented to the jury through the testimony of Officer Aurelio Garcia who read into evidence a signed, written statement that the defendant had given to Garcia.

In Perez’ statement to Villalobos’ attorney, she stated that when she was at the park with "Jose H.," she saw that he had a pistol in his pants.  The statement asserted that he had obtained the gun on the previous day from his friend Michael.  On the witness stand, Perez said that she lied to Villalobos’ attorney about the gun to help Villalobos not go to jail.  At trial, she testified that she saw some of the defendant’s other friends with a gun on the day before the incident in question.

During the trial, Perez testified that her sister was Villalobos’ girlfriend.  The defendant’s written statement asserted that Perez’ sister is the mother of Villalobos’ children.

According to the defendant’s statement, while in the park Villalobos said he wanted to get some money to buy marijuana to smoke.  The defendant wondered where they were going to get the money.  The defendant’s mother no longer would give him money because she knew what he "use[d] it for."

The victim, Linda Baity, rode up to these three individuals in the park on a bicycle.  Perez testified that Baity asked for a cigarette and whether any of them wanted to "get high."  According to the defendant’s statement, Baity asked if they wanted to smoke marijuana.  They said, "yeah."

According to the defendant’s statement, Perez left on her bicycle to find some money.  Perez testified that she rode to a nearby Shell gas station on Villalobos’ bicycle.

Baity went into the restroom.  When she returned, she pulled out "a dime bag," a bag containing a rock of crack cocaine about the size of a dime.  The defendant’s statement asserted that Villalobos pulled a small semi-automatic handgun from his pocket and held it to Baity’s head.  Villalobos demanded that she give him "all you have."  Baity pulled another bag of marijuana from her pants and gave it to Villalobos.  A "rock" of cocaine fell out and Villalobos "got it, too."

The defendant’s statement related that Villalobos then shot Baity in the head.  The defendant jumped and was scared.  His statement asserted that he did not know that Villalobos was going to shoot Baity.  According to the defendant’s statement, Perez was returning and was about 15 to 20 feet away when Villalobos shot Baity.

Perez testified that as she rode back to the park she heard a gunshot.  According to her statement to police, she was near the park when she heard a gunshot.  In this statement, she asserted that the shot sounded as if it came from "the pavilion area."

In the defendant’s statement, he asserted that he helped Villalobos drag Baity’s body into the river and that some of her clothes came off.  When the victim’s body was later retrieved from the river, the police discovered a "softball size" rock tied to the victim with one of her shoe laces.  Villalobos threw her clothes in the river and the defendant threw her bicycle in the river.  His statement said that they "all then ran and split up."

According to Perez’ police statement, she was close enough to see the defendant and Villalobos run south from the pavilion.  At trial, Perez asserted that she did not see the defendant and Villalobos running.

Perez went to the defendant’s house and waited outside.  At trial, she testified that when the defendant and Villalobos returned to the house they appeared "normal."  In her statement to police, she said that when they returned to the defendant’s house they were running, she could tell that they were scared, they were breathing "real hard," and they looked like they were going to cry.

In her police statement, Perez asserted that the defendant’s and Villalobos’ shoes and pants were wet.  They both took their shoes off on the porch of the defendant’s house.  At trial, Perez  said that these statements were lies.

On direct examination by the prosecutor, Perez acknowledged that she had been convicted of a felony.  Prior to this testimony, the judge ruled in chambers that Perez could not be questioned about her conviction for the specific felony of witness intimidation.  She only could be asked about the mere fact that she had been convicted of a felony.

On August 22, 1998, a fisherman discovered Baity’s body in the river.  An autopsy revealed an entry bullet wound about the right ear.  The bullet pierced the ear and entered the skull.  There were no other wounds on the body.  The gunshot wound was determined to have been the cause of Baity’s death.

Detective Randy L. Hartman testified that he went to the crime scene on the riverbank on August 22, 1998.  After observing the victim’s body, he went to Legion Park and saw what appeared to be blood on the concrete under a covered pavilion.  He stated that it appeared that someone dragged something through the blood, made a curve, and headed toward the river.  A bicycle was recovered from the river just south of the pavilion.

On the evening of August 22, 1998, the defendant and Villalobos were arrested.  Perez was interviewed at the police station by Hartman.  She was crying and withdrawn.  At first, she did not want to give a statement to Hartman.  He asked if it would help if she had permission from the defendant to tell the police what happened.  She said, "yes."  Officer Garcia prepared a statement written in both English and Spanish saying, "[T]ell the truth, 
dega
 
la
 
verdad
."  The statement was signed by the defendant.  A gang insignia accompanied the defendant’s signature.  Officer Garcia testified that this gang sign looked like a "little pitchfork."

After Hartman showed Perez the note from the defendant, she gave a statement to Hartman.  In addition to details of the incident already mentioned above, her statement asserted that she loved the defendant and did not want him to get "in trouble."  At trial, Perez denied that she loved the defendant or that she was his girlfriend.  She admitted, however, that she had sex with the defendant.

Perez testified she told the police that following the shooting, the defendant showed her cannabis, crack cocaine, and a county jail visitation slip with the name "Linda Baily" on it that he had taken from Baity’s person.  She testified at trial that she originally thought the victim’s last name was "Baily."  She told the police that the visitation slip was dated for the Wednesday that Baity died.  However, at trial she said that she gave that information to the police because the defendant would "get less time I guess because he was a juvenile."

The police looked for the visitation slip in the trash near the defendant’s house and in the area around the crime scene, but did not find the slip.  At trial, the prosecution introduced in evidence a copy of the visitation receipt obtained from the Kankakee County detention center that was dated Wednesday, August 19, 1998, with the name "Linda Baity" on it.

Officer Garcia testified that after Perez gave her statement to Hartman, she wanted to talk to the defendant.  When she first entered the room with the defendant, she was in a "fairly normal" emotional state.  Garcia testified that the defendant jumped up and wanted to know why Perez "told he did it."  Perez became upset and started crying.  She told the defendant that he told her to tell the truth.  She tried to touch the defendant’s face but he pulled away from her.

Defense counsel did not cross-examine Perez during the trial.  In closing arguments, the prosecution asserted that Perez’ statements to the police and Villalobos’ attorney were credible whereas her trial testimony and demeanor indicated that she was trying to protect the defendant in court.  Defense counsel argued that Perez was not credible because of the inconsistencies between her trial testimony and her statements to the police and to Villalobos’ attorney.

At the conclusion of the trial, the jury found the defendant guilty of first degree murder (720 ILCS 5/9--1(a) (West 1998)), armed robbery (720 ILCS 5/18--2(a) (West 1998)), concealment of a homicidal death (720 ILCS 5/9--3.1(a) (West 1998)), and unlawful use of a weapon (720 ILCS 5/24--1(a)(10) (West 1998)).  The judge sentenced him to 30, 15, 5, and 3 years of imprisonment respectively for these convictions, to be served concurrently.  The defendant appeals from the judgment of conviction and the sentence.

ANALYSIS

I. Whether the Court Erred by Imposing the Mere Fact Rule

A trial court's evidentiary ruling may not be reversed absent a clear abuse of discretion.  
People v. Enis
, 139 Ill. 2d 264, 564 N.E.2d 1155 (1990).  A trial court abuses its discretion when its ruling is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court.  
People v. Illgen
, 145 Ill. 2d 353, 583 N.E.2d 515 (1991).

In 
People v. Atkinson
, 186 Ill. 2d 450, 713 N.E.2d 532 (1999), the Illinois Supreme court declined to adopt the mere fact method of impeachment of witnesses in Illinois.  The court reiterated the general rule governing the use of prior convictions to impeach a witness’ credibility as articulated in 
People v. Montgomery
, 47 Ill. 2d 510, 268 N.E.2d 695 (1971).

Under 
Montgomery
, a witness’ prior conviction is admissible to attack the witness’ credibility if (1) the prior crime was punishable by death or imprisonment in excess of one year, or involved dishonesty or false statement regardless of the punishment, (2) less than 10 years has elapsed since the date of conviction of the prior crime or release of the witness from confinement, whichever is later, and (3) the probative value of admitting the prior conviction outweighs the danger of unfair prejudice to the defendant.  
Atkinson
, 186 Ill. 2d 450, 713 N.E.2d 532.

In 
People v. Paul
, 304 Ill. App. 3d 404, 710 N.E.2d 499 (1999), the defense wished to impeach the prosecution’s main witness with his prior convictions.  The trial court limited defense impeachment to the mere fact of the prosecution witness’ prior convictions.  The appellate court reversed, however, stating that after reviewing the record in that case, the trial court violated the defendant’s sixth and fourteenth amendment rights of confrontation by imposing the mere fact rule.  
Paul
, 304 Ill. App. 3d 404, 710 N.E.2d 499.  "In all criminal prosecutions, the accused shall enjoy the right *** to be confronted with the witnesses against him ***."  U.S. Const., amend VI.

The 
Paul
 court stated:

"The introduction of evidence of a prior crime is a general attack on the credibility of the witness.

The issue is whether defendant’s inability to make the inquiry created a substantial risk of prejudice by depriving him of the ability to test the truth of the witness’s direct testimony; in answering this question, the court must look to the record as a whole and the alternative means open to defendant to impeach the witness.  [Citation.]  If that review shows that the jury has been made aware of adequate factors concerning relevant areas of impeachment of a witness, no constitutional question arises merely because defendant has been prohibited on cross-examination from pursuing other areas of inquiry.  [Citation.]  Thus, in determining whether defendant’s right of confrontation has been violated, a reviewing court looks not only to what defendant was prohibited from doing but also to what he has been allowed to do; and where the jury has been made aware of adequate factors regarding the credibility of the prosecution witness, a reviewing court may conclude that there is no constitutional error or manifest prejudice to the defendant. [Citation.]"  
Paul
, 304 Ill. App. 3d at 411-12, 710 N.E.2d at 504.

A trial error is harmless only if the error beyond a reasonable doubt did not contribute to the defendant's conviction.   
People v. Shaw
, 186 Ill. 2d 301, 713 N.E.2d 1161 (1998).

In the instant case, the record as a whole reflects that the jury was made aware of adequate factors regarding Perez’ credibility.  The prosecution impeached the credibility of Perez’ trial testimony with her own prior inconsistent statements made to the police and to Villalobos’ attorney.  At trial, the defendant had the alternative means available to impeach Perez’ credibility on the witness stand by cross-examining her, but declined to do so.  In closing arguments, both the prosecutor and defense counsel argued that Perez’ credibility was questionable.  Certainly, the jury was made aware of factors regarding Perez’ credibility.

Under 
Paul
, the trial court’s application of the mere fact rule was not a constitutional error or manifest prejudice to the defendant.  The record reflects beyond a reasonable doubt that even if the defense could have further impeached Perez’ credibility with the fact that her prior conviction was for witness intimidation, such impeachment would not have led to the defendant’s acquittal.  Perez’ credibility already had been severely impeached on direct examination.  The defense had cross-examination available as an alternative means to further impeach Perez on the inconsistencies in her statements, but declined to cross-examine Perez at all.  Therefore, we hold that although the trial court abused its discretion by imposing the mere fact rule, the error was harmless.

II. Whether the Court Erred by Imposing a 30-Year Sentence

On appeal, the defendant argues that his sentence should be reduced because of the disparity between his sentence and the sentence imposed on co-defendant Villalobos, who pled guilty to second degree murder and was sentenced to 15 years’ imprisonment.
(footnote: 2)  The defendant contends that the disparity of sentences between the two co-defendants was not justified because they were similarly situated, having been convicted of crimes involving the same event.  The defendant, however, also asserts that they were dissimilarly situated because of the difference in the two defendants’ ages.  The defendant was 15 years old and Villalobos was an adult at the time of the murder.

Absent an abuse of discretion, the sentence imposed by the trial court may not be altered on review.  
People v. Stacey
, 193 Ill. 2d 203, 737 N.E.2d 626 
(2000).

The sentence for first degree murder is 20 to 60 years of imprisonment.  730 ILCS 5/5--8--1(a)(1)(a) (West 1998).  
The trial court has broad discretionary powers in imposing a sentence because it is generally in a better position than the reviewing court to determine the appropriate sentence by weighing such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age.  
Stacey
, 193 Ill. 2d 203, 737 N.E.2d 626
. 
 A sentencing judge is presumed to have considered all relevant factors, including any mitigating evidence, absent a contrary showing in the record.  
People v. Back
, 239 Ill. App. 3d 44, 605 N.E.2d 689 (1992).  A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense.  
People v. Nussbaum
, 251 Ill. App. 3d 779, 623 N.E.2d 755 (1993).

In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed.  A defendant's youth does not outweigh the other factors.  
People v. Johnson
, 
223 Ill. App. 3d 169,
 584 N.E.2d 515 
(1991).
  Disparity between a sentence given to a defendant convicted in a jury trial and another imposed upon a defendant who pled guilty, without more, does not mandate a reduction in sentence.  
People v. Curry
, 296 Ill. App. 3d 559, 694 N.E.2d 630 (1998).

In the case at bar, the trial judge weighed several factors in sentencing the defendant.  He considered that in exchange for the defendant’s statement to the police, the State agreed to cap its recommended sentence at 40 years.  In mitigation, the judge noted the defendant’s lack of a prior criminal record and his youth at the time of the murder.  In aggravation, the judge found that the defendant was likely to commit another crime and that he was infatuated with gangs, which adversely affected his potential for rehabilitation.  The judge commented that this murder was a predatory crime of opportunity, not a crime caused by passion or provocation.  In order to act as a deterrent to others, the judge felt it necessary to impose a sentence in excess of the minimum.

We find that the trial judge considered the relevant factors in sentencing the defendant.  The sentence imposed was within the statutory sentencing range and was not manifestly disproportionate to the nature of the offense committed.  The judge was not required to reduce the defendant’s sentence either because the defendant was similarly situated to Villalobos or because of the defendant’s youth.  Therefore, we hold that the trial court did not abuse its discretion by sentencing the defendant to 30 years of imprisonment for first degree murder.

III. Whether the Court Erred by Refusing to Bar

the Defendant’s Statement Given to the Police

in Violation of the Vienna Convention

The defendant in this case was a citizen of Mexico living illegally in the United States.  The United States and Mexico are signatories to a multilateral treaty known as the Vienna Convention.
(footnote: 3)  
United States v. Lombera-Camorlinga
, 206 F.3d 882 (9th Cir. 2000).  Article 36 of the Vienna Convention states that when a foreign citizen is arrested, the authorities of the arresting state shall inform the person arrested of his or her rights under the treaty.  Such rights include the right to communicate with consular officers of the citizen’s country, to be visited by and to correspond with such officers, and to have the officers arrange for the foreign citizen’s legal representation.  Article 36 also states that the foreign citizen’s rights shall be exercised in conformity with the laws and regulations of the arresting state provided that these laws and regulations enable full effect to be given to the intended purposes of the article.  Vienna Convention on Consular Relations, April 24, 1963, art. 36, 21 U.S.T. 77.

Under the sixth amendment to the United States Constitution, all treaties made by the United States are the supreme law of the land.  U.S. Const., art VI.  In 
Breard v. Greene
, 523 U.S. 371, 140 L. Ed. 2d 529, 188 S. Ct. 1352 (1998), the United States Supreme Court stated in 
dictum
 that the Vienna Convention arguably confers the right to consular assistance on a foreign national following arrest.  The 
Breard
 Court, however, did not reach the merits of an appropriate remedy for a violation of this right.  In 
Breard
, the Court found that the defendant’s 
habeas
 
corpus
 petition was procedurally defaulted in federal court for failure to assert his Vienna Convention claim in state court.  
Breard
, 523 U.S. 371, 140 L. Ed. 2d 529, 188 S. Ct. 1352.

Recently, the Illinois Supreme Court found that the failure to inform a foreign defendant of his Vienna Convention rights did not amount to fraudulent concealment by the State, did not toll a state procedural rule’s limitation period, and was not reason to grant the defendant 
mandamus
 relief.  
People v. Madej
, 193 Ill. 2d 395, 739 
N.E.2d 423
 (2000).  At least four federal circuit courts of appeals recently have held that suppression or exclusion of evidence is not an appropriate remedy for failure to inform a foreign defendant of his or her Vienna Convention rights.  See 
United States v. Li
, 206 F.3d 56 (1st Cir. 2000); 
Lombera-Camorlinga
, 206 F.3d 882; 
United States v. Chaparro-Alcantara
, 226 F.3d 616 (7th Cir. 2000); 
United States v. Cordoba-Mosquera
, 212 F.3d 1194 (11th Cir. 2000).

In 
Chaparro-Alcantara
, the seventh circuit assumed without deciding that the Vienna Convention confers an individual right on a foreign citizen in the United States.  The court analyzed whether the exclusionary rule, however, was the appropriate sanction for violation of that right.

The seventh circuit reviewed basic principles concerning the exclusionary rule.  According to Supreme Court and seventh circuit precedent, exclusion of evidence is only appropriate when the United States Constitution or a statute requires it.  The rights protected by the Vienna Convention are equivalent to rights protected by statute because the Supreme Court has held treaties and statutes to be on equal footing under the Constitution.  The exclusionary rule is an appropriate remedy for a violation of a treaty only when the treaty provides for that remedy.  The seventh circuit found that nothing in the text of the Vienna Convention indicated that suppression of evidence was an appropriate remedy for violations of article 36.

The seventh circuit, therefore, found that suppression was not an appropriate remedy for evidence obtained in violation of the Vienna Convention.  
Chaparro-Alcantara
, 226 F.3d 616.  In 
Lombera-Camorlinga
, the ninth circuit declined to speculate if damages or equitable relief might be appropriate remedies for violating article 36.  
Lombera-Camorlinga
, 206 F.3d 882.

We concur with the decisions of these four federal circuit courts in finding that suppression of evidence is not an appropriate remedy for violation of article 36 of the Vienna Convention.  Accordingly, we hold that the trial judge did not abuse his discretion when he refused to bar the defendant’s statement given to the police in violation of the Vienna Convention.

IV. Whether the Court Erred by Allowing Perez’ Prior 

Inconsistent Statements to Be Read In Evidence

The credibility of a witness may be attacked by the party calling the witness.  134 Ill. 2d R. 238(a).  In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with the witness’ testimony at trial, the witness is subject to cross-examination concerning the statement, the statement narrates, describes, or explains an event or condition of which the witness had personal knowledge, and the statement was signed by the witness.  725 ILCS 5/115--10.1 (West 1998).

Citing 
People v. Cruz
, 162 Ill. 2d 314, 643 N.E.2d 636 (1994), the defendant argues that Perez’ prior inconsistent statements were inadmissible because her testimony was merely disappointing to the State and did not affirmatively damage the State’s case.  The court in 
Cruz
, however, stated that a party can admit in evidence a "turncoat" witness' prior inconsistent statement by complying with section 115--10.1 of the Code of Criminal Procedure of 1963.  The court took exception to introduction of oral inconsistent statements for impeachment purposes that did not comply with section 115--10.1.  
Cruz
, 162 Ill. 2d 314, 643 N.E.2d 636.

To be inconsistent and, therefore, admissible as substantive evidence under section 115--10.1, a witness’ prior statement need not directly contradict his or her testimony, but need only have a tendency to contradict it.  
People v. Modrowski
, 296 Ill. App. 3d 735, 696 N.E.2d 28 (1998).  
Inconsistency is not limited to direct contradictions but may be found in evasive answers, silence, or changes in position.  
People v. Flores
, 
128 Ill. 2d 66, 
538 N.E.2d 481 
(1989)
.

In the instant case, Perez’ testimony at times directly contradicted signed written statements given to Villalobos’ attorney or to the police.  At other times, her testimony was evasive or was a change of position from her earlier statements.  Her prior statements complied with section 115--10.1 in that they were inconsistent with her trial testimony, she was subject to cross-examination, her statements narrated, described, and explained events and conditions of which she had personal knowledge, and the statements were proved to have been signed by her.  Therefore, we hold that the trial court did not abuse its discretion by admitting in evidence her prior inconsistent statements.

V. Whether the State Proved the Elements of

First Degree Murder, Armed Robbery, and

Unlawful Use of a Weapon Beyond a Reasonable Doubt

The standard to be applied in reviewing the sufficiency of evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Ward
, 154 Ill. 2d 272, 609 N.E.2d 252 (1992)
.

A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death the person (1) either intends to kill or do great bodily harm to that individual, or knows that such acts will cause death to that individual, (2) knows that such acts create a strong probability of death or great bodily harm to that individual, or (3) is attempting or committing a forcible felony other than second degree murder.  720 ILCS 5/9--1(a) (West 1998).  A person commits armed robbery when he or she takes property from the person or presence of another by the use or by threatening the imminent use of force while he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon.  720 ILCS 5/18--2(a) (West 1998).  A person commits the offense of unlawful use of a weapon when the person knowingly carries or possesses on or about his or her person, upon any public lands within the city limits any pistol, revolver, or other firearm.  720 ILCS 5/24--1(a)(10) (West 1998).

The trier of fact is in the best position to judge the credibility of witnesses, the weight to be given to testimony, and the reasonable inferences to be drawn from such testimony.  
People v. Byron
, 164 Ill. 2d 279, 647 N.E.2d 946 (1995).  A conflict in the evidence does not establish a reasonable doubt.  A verdict based on substantial and credible evidence is not rendered reversible by the fact that other evidence was introduced which, if believed, might have resulted in a different verdict.  
People v. Pursley
, 284 Ill. App. 3d 597, 672 N.E.2d 1249 (1996).  Inconsistencies in the testimony of the witnesses, bias or interest affecting their credibility, and the weight to be given to the testimony of witnesses are for the trier of fact to determine.  
People v. Traylor
, 201 Ill. App. 3d 86, 559 N.E.2d 286 
(1990).

In the case at bar, the jury was instructed concerning the three forms of first degree murder listed above.  The jury reasonably could have believed Perez’ statement to Villalobos’ attorney that the defendant was carrying the gun on the night of the murder.  The jury, therefore, could have inferred from the evidence that the defendant rather than Villalobos intentionally shot Baity.  Alternatively, the jury reasonably could have inferred that Baity was killed during the robbery committed either by the defendant alone or by the defendant and Villalobos acting together.  Even if the defendant did not kill Baity, the jury reasonably could have held him to be responsible for her death under a theory of accountability.  Therefore, the jury rationally could have inferred that the defendant was guilty of felony murder.

The jury reasonably could have found that the defendant threatened Baity with a handgun when he took the drugs he later showed to Perez.  Therefore, the jury rationally could have found that the defendant was guilty of armed robbery.

The jury reasonably could have inferred from the evidence that the defendant was carrying a pistol in a public park within the Kankakee city limits.  Therefore, the jury rationally could have found the defendant guilty of unlawful use of a weapon.

The jury was in the best position to assess the credibility of the witnesses, the possible bias in statements given by Perez and the defendant, and the conflicting statements made at various times by the defendant and Perez.  The inconsistencies in these statements did not establish reasonable doubt.  Therefore, we hold that taking the evidence in the light most favorable to the prosecution, the State did not fail to prove the elements of first degree murder, armed robbery, and unlawful use of a weapon beyond a reasonable doubt.

CONCLUSION

For the foregoing reasons, we affirm the ruling of the Kankakee County circuit court.

Affirmed.

HOLDRIDGE, J., with HOMER, P.J., and LYTTON, J., concurring.

FOOTNOTES
1: Villalobos pled guilty to second degree murder and was sentenced to 15 years’ imprisonment.

2: The sentencing range for second degree murder is 4 to 20 years.  730 ILCS 5/5--8--1(a)(1.5) (West 1998).

3: The record reflects that in chambers the parties mistakenly referred to the Vienna Convention as the Geneva Convention.