NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250562-U

NO. 4-25-0562

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 1, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| MAURICE HUDSON, | ) | No. 24CF123 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Defendant was not entitled to plain-error review of his claim of prosecutorial misconduct where he did not establish that the prosecutor's remarks were clearly or obviously improper. Absent clear or obvious error, his alternative claim of ineffective assistance of counsel necessarily fails.
(2) The trial court's imposition of a 10-year prison sentence for aggravated battery of a correctional officer was not excessive.

¶ 2    A jury found defendant, Maurice Hudson, guilty of aggravated battery of a correctional officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)), and the trial court subsequently sentenced him to 10 years in prison. Defendant appeals both his conviction and sentence, arguing that (1) the prosecutor improperly vouched for the credibility of the State's only witness during closing argument and (2) the court imposed an excessive sentence. We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                                  A. The Charge

¶ 5        In May 2024, the State charged defendant with one count of aggravated battery of a correctional officer (*id.*), alleging that on May 25, 2022, he "knowingly made physical contact of an insulting or provoking nature with Correctional Officer Jennifer Boland, in that [he] spat on [Boland] knowing [her] to be a correctional institution employee *** engaged in the performance of his [*sic*] authorized duties."

¶ 6                                      B. The Jury Trial

¶ 7        Defendant's jury trial was held on March 3, 2025. The State called Boland as its only witness to testify. Defendant did not testify or present any evidence.

¶ 8                                      1. *The State's Evidence*

¶ 9        Boland, who at the time of trial held the rank of lieutenant with the Illinois Department of Corrections (DOC), testified that on May 25, 2022, she was employed as a "cell house sergeant" at the Pontiac Correctional Center (Pontiac) where defendant was an inmate. Boland testified that on the date in question, "[n]ursing had called" her to tell her that defendant "needed to get his enforced injection ***, he was to get a shot." After receiving the message from nursing, Boland went to defendant's cell with the intention of placing him in restraints and escorting him to the "med room" to get his shot. According to Boland, when she arrived at defendant's cell, the following ensued:

> "A. I told [defendant] that he needed to come to the front of the cell, I was going to place restraints on him to take him for his shot. He then turned away from me, but like he was going to walk to the back of the cell and then turned towards me, and very calmly spit in my face—
>
> ***
>
> A. —hitting me in the eyes, mouth."

Boland testified that right before defendant spat on her, he had made a sound akin to "[w]hen somebody clears their throat." When asked if defendant had made any statements to her prior to spitting, Boland answered, "No. He was very calm, and he said that he wasn't coming out; and that was it."

¶ 10          The State published two photos to the jury during Boland's testimony: (1) a picture of the gallery at Pontiac in which defendant's cell was located and (2) a picture of a cell door at Pontiac. The State also published a video, which Boland described to the jury. Boland testified that the video showed her approaching defendant's cell door and then quickly backing away from it—neither defendant nor any saliva can be seen in the video.

¶ 11          Defendant's cross-examination of Boland consisted of the following exchange:

"Q. Lieutenant Boland, is it possible, as my client *** was speaking to you, saliva just came out of his mouth while he was speaking?

A. That's not how it was.

Q. Okay. I have no further questions."

¶ 12                              2. *Defendant's Closing Argument*

¶ 13          During closing arguments, defense counsel argued to the jury that defendant "did not intentionally spit on anyone." After asserting that the video evidence was "not very helpful one way or the other," defense counsel stated to the jurors, "So, *** all that you have is the testimony of Lieutenant Boland; and it is the defense position that it is possible, while he was speaking, saliva came out of his mouth, and that he did not knowingly spit on her, he did not intentionally spit on her."

¶ 14                              3. *The Prosecutor's Rebuttal Closing Argument*

¶ 15        During his rebuttal closing argument, the prosecutor stated the following, in pertinent part:

>   "One of the things you'll have to weigh is just credibility, credibility of the witness, what she testified to, her demeanor while she's testifying to those things. Recall back, it wasn't that long ago, but recall back to how she testified. Did it seem like she was less than credible? Was she trying to embellish, was she trying to deceive you? I would argue she wasn't, that she testified credibly."

¶ 16                            4. *The Jury's Verdict*

¶ 17        The jury found the State had proven defendant guilty of aggravated battery of a correctional officer beyond a reasonable doubt.

¶ 18                            C. Posttrial Proceedings

¶ 19        Defendant filed a motion for a new trial. On April 29, 2025, the trial court conducted a combined hearing to (1) address defendant's posttrial motion and (2) sentence him.

¶ 20                        1. *Defendant's Motion for a New Trial*

¶ 21        In his motion for a new trial, defendant challenged the sufficiency of the State's evidence but did not raise a claim of prosecutorial misconduct. The trial court denied the motion.

¶ 22                            2. *The Sentencing Hearing*

¶ 23        At the sentencing hearing, the trial court noted at the outset that it had reviewed the presentence investigation report (PSI) filed by the State in anticipation of the hearing. The PSI was admitted into evidence without objection. The State did not present any evidence in aggravation. Defendant did not present any evidence in mitigation.

¶ 24        According to the PSI, at the time of the instant offense, defendant was serving a 40-year prison sentence for murder following his conviction in Cook County case No.

11-CR-51340. The PSI further indicates that defendant has been diagnosed with schizophrenia and, since the beginning of his sentence in 2015, he has been administered psychotropic medication while in DOC custody. In June 2016, he "was seen by the Treatment Review Committee." The committee "concurred with the previously imposed condition that [defendant's] psychotropic medications be given by involuntary administration due to the decrease in functioning and danger of physical harm due to an inability to provide for basic needs." The PSI provides the following additional information concerning defendant's mental health:

> "[T]he Treatment Review Committee determined [defendant] suffers from mental illness that, without consistent psychotropic medication compliance, has impacted his level of functioning and contributed to concerns regarding the safety of others, property, and his overall well-being. He continues to be on enforced medication status due to his limited insight into his mental illness and the need for continued treatment with psychotropic medications. In addition, he has shown a propensity for violence as evidenced by a history of staff and resident assaults and possessing a weapon. Furthermore, it was determined that his medications continue to be given on an involuntary basis to keep his persecutory delusions and paranoia from increasing which will cause potentially violent behaviors based on a deterioration in stability and increase prominent symptoms."

The PSI also provides, "[DOC] records show that between [August 2015] and [March 2025, defendant] has incurred 35 internal rules violations, the large majority of which [DOC] has considered to be 'major' in nature." Since defendant was transferred to Dixon Correctional

Center in November 2024, "he has had a wide variety of disciplinary reports for Impairment of Surveillance, Dangerous Contraband, and Sexual Misconduct."

¶ 25      The State, after noting defendant was extended-term eligible due to his criminal history, recommended a 10-year prison sentence. It argued that defendant was "not compliant with taking his medications," despite "pretty good documentation from [DOC] regarding [his] mental health." The State further "note[d] that [defendant's] disciplinary record between August of 2015 and March of [2025] has 35 rule violations, a large majority of them being major rule violations." Defendant, on the other hand, recommended that the trial court "not sentence him to more than the minimum three years in this case" because "for over ten years now he has had significant mental health issues."

¶ 26      The trial court sentenced defendant to 10 years of imprisonment, in accordance with the State's recommendation. In imposing its sentence, the court began by noting that defendant was extended-term eligible because of his criminal history. The court then articulated the factors it had taken into consideration when making its sentencing determination:

> "You don't understand that this is a serious matter, that it's not appropriate conduct and especially when you're in [DOC custody].
>
> So I do think one of the strongest factors in this case is deterrence. It is simply not acceptable. It's not okay to engage in that type of conduct. Regardless of whatever your mental health issues are, it doesn't make it okay. Your mental health issues don't rise to the level of insanity or fitness. So to some extent, I think it's just kind of an excuse that people are using to engage in behavior that is just not acceptable.

We want people in society to be able to follow our basic rules. You violated that in a very serious way by committing a Class M felony offense of murder, and now you can't even follow the rules inside [DOC] that are there to make sure that you do not engage in this ongoing conduct that is so disrespectful to other citizens in society. Whether you are in [DOC custody] or out of [DOC custody], you've demonstrated that you just don't respect other people; and so I do think that it is, deterrence is a very strong factor in this case.

Also your conduct while in [DOC custody] of ongoing issues following the rules, I think it said 35 infractions, a majority of them being major, so you do have a history of engaging in this type of disruptive and really criminal behavior delinquency [*sic*] while you're in [DOC custody].

Again, I recognize that you have mental health issues. I just don't think they rise to the level where it excuses your conduct. So if you can't follow the rules while you're in [DOC custody], then there's a reason for the extended term sentencing.

And here, I think that if I gave you a term of probation or conditional discharge it would deprecate the serious nature of the charges and be inconsistent with the ends of justice. It is simply not acceptable, and deterrence I think is a significant factor for the Court to be mindful of.

So I am going to sentence you on this charge to ten years as the State recommended, which I think is very reasonable under the circumstances."

¶ 27          3. *Defendant's Motion to Reconsider Sentence*

¶ 28　　　　　Defendant subsequently filed a motion to reconsider his sentence. Defendant argued that "the sentence imposed was excessive in that the Court did not give sufficient weight to [his] severe mental health conditions." Defendant also argued the sentence "was unduly harsh and punitive in consideration of all of the matters placed in evidence at the sentencing hearing."

¶ 29　　　　　The trial court denied defendant's motion following a hearing. The court reasoned that it had taken "all proper factors into consideration," and while "there was mitigation presented, the aggravating factors greatly outweighed the mitigating factors." The court also noted that the sentence was "well within the range as prescribed by statute" and "appropriate *** given the totality of the circumstances."

¶ 30　　　　　This appeal followed.

¶ 31　　　　　　　　　　　　　　II. ANALYSIS

¶ 32　　　　　On appeal, defendant argues (1) the prosecutor improperly vouched for Boland's credibility during rebuttal closing argument and (2) the trial court imposed an excessive sentence.

¶ 33　　　　　　　　　　　　　A. Prosecutorial Misconduct

¶ 34　　　　　First, defendant argues that he "was prejudiced when during closing arguments the prosecutor improperly vouched for the State's only witness by stating that he would argue that the witness testified credibly." Defendant acknowledges he forfeited the instant claim by failing to object at trial and raise it in his posttrial motion (see *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)), but he nonetheless requests that we review the claim under the first prong of the plain-error doctrine or, alternatively, as a claim of ineffective assistance of counsel.

¶ 35　　　　　　　　　　　　　　1. *Plain Error*

¶ 36    "The plain-error doctrine does not create a 'general saving clause' to allow defendants to escape the consequences of their nonfeasance. [Citation.] Instead, it offers a narrow exception to the rule of procedural default for unpreserved errors." (Internal quotation marks in original.) *People v. Williams*, 2022 IL 126918, ¶ 48. Under the first prong of the doctrine, a defendant must establish that "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against [them], regardless of the seriousness of the error." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). "When addressing a claim of plain error and an alternative claim of ineffective assistance of counsel, appellate courts first consider whether the defendant has established a clear or obvious error." *People v. Gilker*, 2023 IL App (4th) 220914, ¶ 78; see *Williams*, 2022 IL 126918, ¶ 49 ("[T]he threshold inquiry is whether there was an error at all."). "That requires a 'substantive look' at the issue [citation] under the standard for evaluating prosecution comments." *Williams*, 2022 IL 126918, ¶ 49. "Absent a clear or obvious error ***, neither the doctrine of plain error nor a theory of ineffective assistance affords any relief from the forfeiture." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 179. "Whether there is plain error is a question of law, which we review *de novo*." *Williams*, 2022 IL 126918, ¶ 48.

¶ 37              2. *Improper Comments During Closing Argument*

¶ 38    "The purpose of closing arguments is to provide the parties with a final opportunity before the jury to review the admitted evidence, to explain the relevant law, and to assert why the evidence and the law compel a favorable verdict." *Id.* ¶ 40. "A prosecutor *** has wide latitude in making a closing argument and may comment on the evidence and any reasonable inferences that arise from it." *Id.* ¶ 44. In addition, "[a] prosecutor may argue that a witness is or is not credible." *People v. Potts*, 2021 IL App (1st) 161219, ¶ 280. However, a

prosecutor "may not personally vouch for the credibility of a witness or use the credibility of the state's attorney's office to bolster a witness's testimony." *Id.*; see *People v. Lee*, 229 Ill. App. 3d 254, 260 (1992) (noting that it is improper "for the prosecutor to express personal beliefs or opinions, or invoke the integrity of the state's attorney's office, to vouch for the credibility of a prosecution witness"); *People v. Rainey*, 2023 IL App (4th) 230176-U, ¶ 29 ("[T]he credibility of the witnesses is fair game for comment by the prosecution as long as explicit personal opinions are avoided."). "Improper bolstering only occurs when the prosecutor explicitly offers a personal opinion about the witness." *Potts*, 2021 IL App (1st) 161219, ¶ 280. "A prosecutor's comment in closing argument is reversible error only if it is both (1) improper and (2) substantially prejudicial." *Gilker*, 2023 IL App (4th) 220914, ¶ 126.

¶ 39 In the context of analyzing the propriety of a prosecutor's remarks during closing argument, this court has stated the following about the boundary separating proper prosecutorial commentary on a witness's credibility from improper prosecutorial bolstering of a witness's credibility:

> "[W]e expressly reject the notion that a prosecutor improperly crosses the bounds of asserting his personal views regarding witnesses' credibility or defendant's theory of the case if the jury has to *infer* the prosecutor is doing so from his comments. Thus, we hold that for a prosecutor's closing argument to be improper, he must *explicitly* state that he is asserting his personal views, stating for example, 'this is my personal view.' " (Emphases in original.) *People v. Pope*, 284 Ill. App. 3d 695, 707 (1996).

To further illustrate this boundary, we have held, on the one hand, that statements such as, " 'I do think [the witness'] statements are credible' " (*People v. Boling*, 2014 IL App (4th) 120634,

¶ 127), and " 'I really believe that *** [the witness] was very, very truthful when he sat here' " (*People v. Long*, 2018 IL App (4th) 150919, ¶ 97), constitute improper bolstering of a witness's credibility. On the other hand, we have found that statements such as, " 'I also suggest to you that [the witness's] testimony here in court was compelling' " (*Gilker*, 2023 IL App (4th) 220914, ¶ 129), and " 'I would argue [the witness] testified credibly' " (*Rainey*, 2023 IL App (4th) 230176-U, ¶ 27), constitute proper commentary on the credibility of a witness.

¶ 40                                  3. *This Case*

¶ 41          Turning to the merits of this case, as indicated, defendant argues the prosecutor improperly vouched for Boland's credibility during his rebuttal closing argument. Specifically, defendant contends the prosecutor improperly asserted his personal belief that Boland was credible when he stated the following to the jury:

> "One of the things you'll have to weigh is just credibility, credibility of the witness, what she testified to, her demeanor while she's testifying to those things. Recall back, it wasn't that long ago, but recall back to how she testified. Did it seem like she was less than credible? Was she trying to embellish, was she trying to deceive you? *I would argue she wasn't, that she testified credibly*." (Emphasis added.)

Defendant maintains that the italicized portion of the prosecutor's remarks constitutes "an improper testament to [his] own beliefs rather than a proper commentary on the evidence." Defendant further contends that this was clearly or obviously improper bolstering by the prosecutor because his "statement, not supported by reference to any specific statements or evidence, is exactly the sort of statement this Court rejected in *Boling* and in *Long*."

¶ 42          We find defendant has failed to satisfy his burden of establishing that the prosecutor's remarks were clearly or obviously improper. As previously indicated, we have consistently held "that for a prosecutor's closing argument to be improper, he must *explicitly* state that he is asserting his personal views, stating for example, 'this is my personal view.' " (Emphasis in original.) *Pope*, 284 Ill. App. 3d at 707. Here, the prosecutor did not *explicitly* state that he was asserting his personal view that Boland was credible. He did not state, for instance, " 'I do think [Boland's] statements are credible,' " as was the case in *Boling*, 2014 IL App (4th) 120634, ¶ 127. Nor did he state, " 'I really believe that [Boland] was very, very truthful when [she] sat here,' " as was the case in *Long*, 2018 IL App (4th) 150919, ¶ 97. Instead, the prosecutor stated to the jurors, "*I would argue* she wasn't [trying to embellish or deceive you], that she testified credibly." (Emphasis added.) The prosecutor's statement in this case is nearly identical to the statement we found constituted proper commentary on a witness's credibility in *Rainey*, in which the prosecutor stated, " 'I would argue [the witness] testified credibly.' " *Rainey*, 2023 IL App (4th) 230176-U, ¶ 27; see *Gilker*, 2023 IL App (4th) 220914, ¶ 129 (finding proper the prosecutor's statement, " 'I also suggest to you that [the witness's] testimony here in court *** was compelling' "). Because the prosecutor did not explicitly state that he was asserting his personal belief that Boland was credible, we find his remarks during rebuttal closing argument were not clearly or obviously improper. See *People v. Mudd*, 2022 IL 126830, ¶ 22 (noting that under the plain-error doctrine, the defendant has the burden of demonstrating the prosecutor's remarks were clearly or obviously improper).

¶ 43          Accordingly, we must honor defendant's forfeiture of the instant claim and find that his alternative claim of ineffective assistance of counsel also fails. See, *e.g.*, *Jones*, 2020 IL

App (4th) 190909, ¶ 179 (stating that a defendant's alternative claim of ineffective assistance of counsel necessarily fails absent a showing of clear or obvious error).

¶ 44                                     B. Excessive Sentence

¶ 45          Defendant also argues the trial court's imposition of a 10-year prison sentence for aggravated battery of a correctional officer "was excessive because it failed to consider three important factors favoring a shorter sentence." Specifically, defendant contends the court "erred by insufficiently considering [his] history of mental health struggles, the proportionate severity of this offense, and his age at the time of release."

¶ 46          The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "In determining an appropriate sentence, a defendant's history, character, and rehabilitative potential, along with the seriousness of the offense, the need to protect society, and the need for deterrence and punishment, must be equally weighed." *People v. Hernandez*, 319 Ill. App. 3d 520, 529 (2001). "The trial court has broad discretionary powers in imposing a sentence because it is generally in a better position than the reviewing court to determine the appropriate sentence by weighing such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age." *Id.* at 528-29. "A sentencing court is not required to give greater weight to [a] defendant's rehabilitative potential than to the seriousness of the offense. [Citation.] In fact, the seriousness of an offense is considered the most important factor in determining a sentence." *People v. Jackson*, 2014 IL App (1st) 123258, ¶ 53. "Where mitigating evidence is presented to the trial court, it is presumed, absent some indication to the contrary, other than the sentence itself, that the court considered it." *People v. Sauseda*, 2016 IL App (1st) 140134, ¶ 19. "On

- 13 -

review, the sentence imposed by the trial court will not be reversed absent an abuse of discretion." *People v. Pina*, 2019 IL App (4th) 170614, ¶ 20. "A sentence which falls within the statutory range is not an abuse of discretion unless it is manifestly disproportionate to the nature of the offense." *Hernandez*, 319 Ill. App. 3d at 529.

¶ 47 Here, defendant was convicted of aggravated battery of a correctional officer pursuant to section 12-3.05(d)(4)(i) of the Criminal Code of 2012 (720 ILCS 5/12-3.05(d)(4)(i) (West 2022)), which is a Class 2 felony with a sentencing range of three to seven years in prison. See *id.* § 12-3.05(h); 730 ILCS 5/5-4.5-35(a) (West 2024). Due to defendant's criminal history, he was extended-term eligible, making the sentencing range "not less than 7 years and not more than 14 years." 730 ILCS 5/5-4.5-35(a) (West 2024); see *id.* § 5-5-3.2(b)(1). The parties agree that defendant's 10-year sentence falls within the applicable statutory sentencing range.

¶ 48 1. *Mental Health*

¶ 49 Defendant contends "the trial court erred by refusing to adequately consider the mitigating impact of [his] mental health struggles." Specifically, he asserts that the court's remarks concerning mental health at the sentence hearing reveal that the court was

> "signaling that [it] was uninterested in hearing mental health claims altogether when [it] opined that mental health issues that do not rise to the level of insanity or lack of fitness are 'just kind of an excuse that people are using to engage in behavior that is just not acceptable.' "

¶ 50 Here, in articulating its reasoning for imposing a 10-year sentence, the trial court first stated that it "recognize[d] that there [were] mental health issues." However, the court also went on to note, "[T]hat doesn't mean it's okay to commit these types of offenses." After finding deterrence was "one of the strongest factors," the court then stated:

"Regardless of whatever your mental health issues are, it doesn't make it okay. Your mental health issues don't rise to the level of insanity or fitness. So to some extent, I think it's just kind of an excuse that people are using to engage in behavior that is just not acceptable."

In concluding its discussion of the sentencing factors it had considered, the court stated, "Again, I recognize that you have mental health issues. I just don't think they rise to the level where it excuses your conduct."

¶ 51    We reject defendant's argument that the trial court's remarks show that it "was uninterested in hearing mental health claims altogether." To the contrary, the court's remarks show that it did consider defendant's mental health but simply concluded it was not a mitigating factor. The court stated multiple times that it "recognize[d]" defendant had mental health issues. By stating, "Your mental health issues don't rise to the level of insanity or fitness," the court was not indicating, as argued by defendant, that it refused, categorically, to consider mental health as a mitigating factor unless it rose to the level of legal insanity or an unfitness to stand trial. In our view, the court highlighted insanity and unfitness simply as two examples of mental health classifications that could be seen as mitigating. The court later clarified its remarks when it stated, "Again, I recognize that you have mental health issues. I just don't think they rise to the level where it excuses your conduct."

¶ 52    The trial court's statements show that it took defendant's mental health into consideration and ultimately found that it was not a mitigating factor. This was appropriate. See, *e.g.*, *People v. Coleman*, 183 Ill. 2d 366, 406 (1998) (noting that our supreme court "has repeatedly held that information about a defendant's mental or psychological impairment is not inherently mitigating" (internal quotation marks omitted)); see also *People v. Tenner*, 175 Ill. 2d

- 15 -

372, 382 (1997) ("At sentencing, a judge *** considering evidence of [a defendant's mental or psychological impairment] might view the information as either mitigating or aggravating, depending, of course, on whether the individual hearing the evidence finds that it evokes compassion or demonstrates possible future dangerousness."). We further note that the PSI contains an extensive discussion of defendant's mental health history, his consistent refusal to take his prescribed psychotropic medications, and the danger he poses to himself and others as a result—not to mention that defendant committed the instant offense while refusing to take his medication. Thus, based on the evidence before it, the court certainly was not required to find defendant's mental health as a mitigating factor.

¶ 53                                    2. *Seriousness of the Offense*

¶ 54            Defendant also contends that his sentence "is disproportionate to the sentences for other, more severe, aggravated batteries and disregards the comparatively low-risk and impermanent nature of spitting as an offensive contact." Defendant notes that aggravated battery causing great bodily harm to an elderly person and aggravated battery causing a correctional institution employee to come into contact with seminal fluid or feces both carry the same sentencing range as the instant offense, yet, according to defendant, "[s]pitting on another *** does not cause the sort of long-term harm" or "indignity associated with" the other offenses.

¶ 55            In *People v. Dickinson*, 2021 IL App (4th) 200080-U, we rejected an argument substantially similar to the one defendant now makes. In *Dickinson*, the defendant was convicted of aggravated battery for spitting on a correctional officer—the same offense as defendant in this case—and the trial court sentenced him to 10 years' imprisonment. *Id.* ¶¶ 2, 5, 27. On appeal, the defendant argued that "the sentence was manifestly disproportionate to the nature of the offense" because, although "being spit on may have been unpleasant, [the correctional officer] was not

harmed nor particularly distressed by the incident." *Id.* ¶ 51. In rejecting the defendant's argument, we provided the following reasoning:

> "Here, while the trial court recognized [the correctional officer] was not injured, the court found a 10-year sentence reflected the seriousness of defendant's crime where defendant spit on [the correctional officer] while [he] performed the duties of his job. The court emphasized under no circumstances should guards at a correctional center be spit on ***. Further, the court considered the need for deterrence ***. In sentencing defendant to 10 years' imprisonment, the court also acknowledged defendant's criminal record, where defendant was serving a sentence in DOC when he spit on [the correctional officer]. Accordingly, we find defendant's 10-year sentence was not manifestly disproportionate to the nature of the offense." *Id.* ¶ 53.

¶ 56    The facts in *Dickinson* are nearly identical to those now before us, and we find the analysis in that case persuasive. As we did in *Dickinson*, we again reject defendant's argument that a 10-year sentence is manifestly disproportionate to the nature of the offense.

¶ 57                              3. *Defendant's Age at the Time of Release*

¶ 58    Lastly, defendant argues that "the trial court did not sufficiently consider [his] age at the time of release." He contends it was improper for the court to rely so heavily on deterrence as an aggravating sentencing factor when he will not serve the instant sentence until he "is in his 60s and into his 70s," and "data suggests that people at that age are vanishingly unlikely to commit this sort of offense."

¶ 59    In *People v. Thurman*, 2024 IL App (4th) 230391-U, ¶ 81, this court stated the following about a trial court's discretion in sentencing an "older offender":

"Where the circumstances of a case justify a lengthy prison sentence, there is no requirement for a court to sentence an older offender to a lesser term in prison than a younger offender would deserve. Defendant seems to be arguing that unless an offense merits a life sentence, a court must fashion a prison sentence that is within the defendant's life expectancy. Defendant fails to cite any cases supporting this proposition. A person's advanced age at the time of committing a criminal offense is not inherently a mitigating sentencing factor."

Our reasoning in *Thurman* applies with equal logic here.

¶ 60    On a broader level, we reject defendant's contention that the trial court "did not sufficiently consider [his] age at the time of release." As previously indicated, and absent some showing to the contrary, we must presume that the court considered all relevant evidence before it. See, *e.g.*, *Sauseda*, 2016 IL App (1st) 140134, ¶ 19. Here, defendant has failed to demonstrate that the court did not consider his age when imposing its sentence. Moreover, as we noted in *Thurman*, the court was not required to find defendant's age at the time of release was a mitigating factor. Given that defendant committed the instant offense while in prison and had also "incurred 35 internal rules violations" since 2015, it was reasonable for the court to place greater weight on the need for deterrence than defendant's age at the time of release. *Thurman*, 2024 IL App (4th) 230391-U, ¶ 81.

¶ 61    Accordingly, as discussed, we find the trial court's imposition of a 10-year prison sentence for aggravated battery of a correctional officer was not excessive.

¶ 62                                    III. CONCLUSION

¶ 63    For the reasons stated, we affirm the trial court's judgment.

¶ 64    Affirmed.